IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BRADLEY SHAFFER, individually and on behalf of BRADLEY SHAFFER'S IRA, and EVELYN BIRCHFIELD, as representatives of a class of similarly situated persons,<br><br>        Plaintiffs,<br><br>v.<br><br>EMPOWER RETIREMENT, LLC, ADVISED ASSETS GROUP, LLC, GREAT-WEST LIFECO, INC., GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA, GREAT-WEST FUNDS, INC., PUTNAM INVESTMENTS, LLC, EMPOWER ADVISORY GROUP, LLC,<br><br>        Defendants. | CIVIL ACTION NO.:1:22-cv-02716<br>_____<br><br>COMPLAINT – CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Bradley Shaffer, individually, on behalf of his Investment

Retirement Account, and Plaintiff Evelyn Birchfield, as representatives of a

class of customers of Defendants who are or were invested in an Empower

Managed Account from 2015 through the present (collectively "Plaintiffs"),

bring this action against Defendants Empower Retirement, LLC ("Empower"), Advised Assets Group, LLC ("AAG"), Great-West Lifeco, Inc. ("Great-West"), Empower Annuity Insurance Company of America formally known as Great-West Life & Annuity Insurance Company, Great-West Funds, Inc. ("GWL"), Putnam Investments, LLC ("Putnam"), and Empower Advisory Group, LLC ("EAG") (collectively "Defendants") for breach of fiduciary duties, fraud, and other claims.

## BACKGROUND

To the public, Empower masquerades as a company that is "customer obsessed,"[1] that "do[es] the right thing" and whose mission is to "empower financial freedom for all."[2] In truth, Empower profits from *disempowering* hard-working, everyday Americans by luring them into high-cost Managed Accounts comprised primarily, if not exclusively, of Empower-affiliated Funds.

Over the last seven to eight years, Empower has misrepresented to clients that its Advisors are salaried, non-commissioned and "objective" fiduciaries acting in the clients' best interest. This is a bald-faced lie. The truth is that the

---

[1] https://www.empower.com/about/our-values (Accessed on October 14, 2022)
[2] https://www.empower.com/about/our-values (Accessed on October 14, 2022)

compensation Empower's Advisors receive is directly tied to enrolling participants into Empower's Managed Account ("Managed Account") product.[3] Empower further directs its Advisors to *only* recommend the higher fee Managed Account (which is operated by AAG, a wholly owned subsidiary of Empower's parent). Indeed, Advisors act in the best interest of Empower rather than their clients.

To top it off, Empower fails to disclose and actively conceals to clients that most of the funds owned by the Managed Accounts are wholly owned by Empower's parent company. This allows the Empower consortium to "double dip" on fees—Empower charges a lucrative management fee based on the assets under management in the Managed Account and Empower's sister companies charge an exorbitant fund management fee for assets held in individual funds. Defendants concealed the relationship between Empower and the Empower-owned funds by naming the funds with an obscure name not connected with Empower such as "Putnam" or "Great-West"[4] funds.

---

[3] The Managed Account is a fee based discretionary trading retirement account where Empower places participants in one of seven different fund portfolios based on age, sex, income, risk tolerance, etc. Most of the funds in the seven managed account "buckets" are Great-West funds, which is owned by Empower's parent company.

[4] Great West began as a local life insurance company in Western Canada back in 1891. http://www.biographi.ca/en/bio.php?BioId=41368 (Accessed on

As a direct result of this scheme, Defendants reaped massive and unlawful profits at the expense of hardworking, unsophisticated investors and retirees, like Plaintiffs, who were lured into the Empower-owned, higher fee Managed Account that contained the Empower-affiliated Great West and Putnam funds even though lower cost investments were more readily available.

## FACTS

1.     As profitability of its retirement plan administration business dwindled, Empower instituted a companywide policy requiring the use of fraudulent sales tactics to induce individuals to transfer assets from their low-fee employer sponsored retirement plans to Empower's higher fee Managed Account product, which contains individual funds owned by Empower's sister companies.

2.     Empower used its knowledge as a retirement plan administrator to identify vulnerable unsophisticated investors and individuals with large account balances nearing retirement as targets for Empower's sales representatives, who then used manipulative sales tactics and falsely portrayed Empower's higher-fee Managed Account as the preferred solution without

---

October 14, 2022). Often dubbed the "Mild West," Canada's West was not nearly as wild as the Old West of America.

regard to whether the recommendation was in the participants' best interests.

3.      Empower and its Advisors made material misrepresentations and concealed conflicts of interest in the following ways, among others:

(i)     misrepresented that its Advisors were objective and disinterested fiduciaries acting in the best interest of the client;

(ii)    misrepresented that its Advisors were salaried, non-commissioned and financially disinterested;

(iii)   failed to disclose that Empower's bonus and compensation structure created financial incentives for Advisors to enroll participants into Managed Accounts;

(iv)    failed to disclose that the Managed Account charged higher fees and generated greater revenue than other lower cost and available alternatives;

(v)     failed to disclose that its "proprietary software" and Advisors only recommend the Managed Account;

(vi)    failed to disclose that the Managed Account and the basket of funds in the Managed Account [GWF and Putnam funds] share common ownership and financial interest with Empower.

4.      As a result of this scheme, Empower reaped massive and unlawful profits at the expense of employees and retirees who were charged higher fees for products and services that underperformed those available through lower cost alternatives.

5.      Empower and its Advisors dishonest actions to benefit themselves at participants' expense violated their fiduciary duties.

- 5 -

6.      In order obtain redress for Empower's misconduct, Plaintiffs bring this action on behalf of a proposed class of similarly situated individuals. Plaintiffs and the class seek an order requiring Empower to make good all losses sustained by class members and for appropriate equitable relief to disgorge Empower's ill-gotten profits.

### A. Empower Misrepresents Its Advisors Are Salaried, Objective, Non-Commissioned Fiduciaries Acting Solely in The Client's Best Interest.

7.      Throughout the Unites States, Empower's government markets division[5] represents to employees and plan participants that its Advisors, or "Counselors", are salaried, non-commissioned and objective:



*See, e.g.*, Sample of Empower Marketing Brochures, attached as Exhibit 1.

_____

[5] Advisors in Empower's government markets division sell the Managed Account to employees of state, federal, and local governments, or agencies.

8.     This assertion is patently false, and Empower's aim is to induce employees and plan participants to accept a meeting with an Advisor, called a "Retirement Readiness Review" ("RRR").

9.     During the RRR, Advisors are trained to identify the customer's "pain points" and "landmines" to pressure the client to move their account into the discretionary and fee-based Managed Account. Empower conducts mandatory training sessions with Advisors to teach them how to manipulate "pain points" and the specific questions they should ask the client to identify the client's "pain points".

10.    Empower's Managed Account product is managed through AAG, a wholly owned registered advisory firm of Empower's parent, GWL. The Managed Account product is a service where AAG and Empower's Advisors have discretionary trading authority over the client's account.[6]

11.    When  Empower's  Advisors  sell  or  recommend  Managed Accounts and when AAG manages the clients' portfolios, they are acting as the client's fiduciary:

---

[6] Empower owes these clients the highest of fiduciary duties.

**Managed Account:** The Managed Account service is geared toward users who wish to have investment professionals select among the available investment options and manage their retirement accounts for them. You will receive a personalized investment portfolio that reflects your investment options and your retirement timeframe, life stages and overall financial picture, including assets held outside your account (if you elect to provide this information), which may be taken into consideration when determining the allocation of assets in your account. Generally, AAG will not provide advice for, recommend allocations of, or manage your outside accounts.

Under the Managed Account service, AAG has discretionary authority over allocating your assets among the core investment options without your prior approval of each transaction. AAG is not responsible for either the selection or maintenance of the investment options available within your retirement account or IRA. If available in your account, AAG will not provide advice for, or recommend allocations of, individual stocks (including employer stock), self-directed brokerage accounts, guaranteed certificate funds, employer-directed monies, or any other investment options that do not satisfy the methodology requirements of the IFE, even if they are available for investment in the plan. Your balances in any of these investment options or vehicles may be liquidated, subject to your plan's and/or investment provider's restrictions.

*See* AAG Customer Agreement, attached as <u>Exhibit 2</u>.

12.     Empower and its Advisors have a tremendous financial incentive to enroll clients into the Managed Account. For clients of the government markets division, Empower charges a quarterly and annual fee based on a percentage of the client's assets under management. This fee varies based on the size of the client's portfolio in the Managed Account:

### SUPPLEMENT A
### FEES FOR THE SERVICE

Fees for each service are shown below. The chart below reflects the applicable billing period and annual fee amount.

| Online Advice | Quarterly Fee | Annual Fee |
|---|---|---|
| | $0.00 | $0.00 |

| My Total Retirement Participant Account Balance | Quarterly Fee | Annual Fee |
|---|---|---|
| < $100,000.00 | 0.1125% | 0.45% |
| Next $150,000.00 | 0.0875% | 0.35% |
| Next $150,000.00 | 0.0625% | 0.25% |
| > $400,000.01 | 0.0375% | 0.15% |

For example, if your account balance subject to My Total Retirement is $50,000.00, the maximum annual fee is 0.45% of the account balance. If your account balance subject to My Total Retirement is $500,000.00, the first $100,000.00 will be subject to a maximum annual fee of 0.45% (quarterly 0.1125%), the next $150,000.00 will be subject to a maximum annual fee of 0.35% (quarterly 0.0875%), the next $150,000.00 will be subject to a maximum annual fee of 0.25% (quarterly 0.0625%), and any amounts over $400,000.00 will be subject to a maximum annual fee of 0.15% (quarterly 0.0375%). For example, the maximum quarterly fee for an account balance less than $100,000.00 (subject to maximum annual fee of 0.45%) would be 0.1125% quarterly, as demonstrated above.

13.     For clients of the private or Retirement Strategies Group ("RSG") division,[7] Empower charges a management fee of approximately 1 to 1.5% of the client's assets under management ("AUM").

14.     Advisors in Empower's government markets division are directly compensated based on the volume of assets they transfer into Managed Accounts. Specifically, Advisors receive sizeable annual bonuses based on Managed Account conversions. Typically, 25-35% of the Advisors' annual bonus is based on the amount of assets transferred into Managed Accounts. Empower sets a hefty annual quota for Managed Account conversions. If the Advisor misses the quota by one dollar, the Advisor does not receive any bonus connected with Managed Account conversions

15.     As a result, both Empower and its Advisors have a huge financial conflict of interest in connection with the Managed Accounts.

16.     Empower further intentionally concealed the conflicts to clients by doing business under the names AAG, Great-West, GWF, and/or Putnam.

---

[7] Empower's private or RSG Advisors solicit private and government employees that are about to retire and convince these clients to rollover their employer sponsored retirement accounts into an Empower managed Investment Retirement Account ("IRA"). RSG Advisors are also trained to pressure clients that have requested to move their accounts from Empower to stay at Empower.

**B. Empower Pressures and Trains Advisors to Sell Managed Accounts.**

17.     In addition to financially incentivizing Advisors to convert assets into Managed Accounts, Empower imposes tremendous pressure on its Advisors to sell Managed Accounts in the following ways, among others:

a) Empower routinely conducts mandatory training sessions to teach Advisors how to sell Managed Accounts;

b) Empower often conducts reviews of Advisors' "sales pitches" and will critique the Advisor, sometimes in front of other Advisors;

c) Empower will teach Advisors how to identify clients' "pain points" for the purpose of pressuring clients to convert to Managed Accounts;

d) Empower will provide Advisors with sales scripts to aid Managed Account conversions;

e) Empower will bombard Advisors with emails encouraging Advisors to "sell sell sell" Managed Accounts;

f) Empower will email lists of the production of top Advisors and hold those Advisors in high regard;

g) If an Advisor is not converting enough Managed Accounts, Empower will put that Advisor on "Performance Improvement Plans";

h) Empower will give Advisors who do not enroll enough participants negative annual reviews which will adversely affect the Advisor's bonuses;

i) Empower will hold training sessions on how to persuade clients to stay in Managed Accounts, especially when the market sours; and

j) Empower will terminate Advisors that do not convert enough assets to Managed Accounts.

## C. Empower Conceals That Its Government Markets Advisors And "Proprietary Software" Only Recommend Managed Accounts.

18.     Empower disallows its government market Advisors from recommending *any* investment other than Managed Accounts. This, even though the Advisors owe the clients heightened fiduciary duties.

19.     Part of Empower's scheme involves the use of "proprietary software" that generates a "recommended portfolio" for the client. In reality there are only seven different managed account portfolios that vary based on age, sex,  income, etc. The Advisors will meet with the client and input the client's information and goals into the software, which will provide a "solution", which will be one of the seven managed account portfolios. The Advisor will then "recommend" this "solution" to the client and try to pressure the client into accepting it.

20.     What the Advisor is forbidden from disclosing to the client is that the software and Advisor *only* recommend Managed Accounts and that the Advisor cannot recommend anything other than the Managed Account.

21.     This scheme is entirely fraudulent as Empower does not disclose—and in fact actively conceals—that its proprietary software and

Advisors will only recommend the Managed Account. Indeed, Empower failed to disclose that Managed Accounts is the only recommendation made by Advisors or the so called "proprietary software".

### D. Empower Conceals That Putnam and Great-West Funds Are Wholly Owned by Empower's Parent.

22.     Empower's Managed Account owns a "basket" of individual funds. Most of the funds held by a Managed Account are GWF and/or Putnam funds.

23.     For clients of Empower's RSG or private division that do not enroll in the Managed Account, the funds recommended to the client are GWF and Putnam funds.[8]

24.     Empower fails to disclose to clients that GWF and Putnam funds are affiliated companies, and that all these entities are wholly owned by a common parent company, GWL or Great-West.

25.     As a result, Empower fails to disclose the financial conflict it has with respect to Managed Accounts, the GWF and Putnam funds held by the Managed Accounts, and the GWF and Putnam funds recommended to clients

---

[8] This means that for RSG clients that do not enroll in the Managed Account, Empower still makes a lucrative fee off of the GWF and Putnam fund management fees, since these are the only funds recommended to the client.

that do not enroll in the Managed Account. Not only does the Empower consortium earn a lucrative fee based on the assets under management in the Managed Account, but it also earns a fund management fee based on the amount of assets held in individual GWF funds and Putnam funds. These fund fees are often around 80bps.

26.     Empower not only fails to disclose its relationship and common ownership with AAG, GWF, and Putnam, it also actively conceals this relationship by using fund names without the word "Empower". By naming the funds "Great West" or "Putnam", unsophisticated investors will not know that these funds are affiliated with "Empower".

## JURISDICTION AND VENUE

27.     This Court has original jurisdiction over these claims under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy for the Class exceeds $5,000,000.00 exclusive of interest and costs, and Plaintiffs are citizens of a state different from Defendants. The aggregate amount in controversy for the Class exceeds $5 million dollars because the total amount of Managed Account and Fund fees Plaintiffs are seeking to disgorge are significantly greater than $5 million dollars.

28.     Additionally, Empower does business in and has its principal place of business in Colorado, and Defendants have obtained the benefits of the laws of the State of Colorado.

29.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because it is the district in which at least one of the Defendants resides and transacts business, and it is the locale where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

*Plaintiffs*

30.     Plaintiff Bradley Shaffer was a participant in an Empower Managed Account that invested the GWF and/or Putnam Funds. Mr. Shaffer opened an Empower Managed account in 2021 as a result of Defendants' fraud and breaches of fiduciary duties described herein. Mr. Shaffer is a citizen of the state of Kansas.

31.     Plaintiff Evelyn Birchfield, a retired employee of the state of Alabama, was a participant in an Empower Managed Account that invested in the GWF and/or Putnam Funds. Ms. Birchfield opened an Empower Managed Account in 2019 as a result of Defendants' fraud and breaches of fiduciary duties described herein. Ms. Birchfield is a citizen of the state of Alabama.

32.     Plaintiffs represent a class of other individuals similarly situated

as participants of an Empower Managed Account which includes individuals in this District and all over the United States.

*Defendants*

33.    Defendant Empower Retirement, LLC ("Empower") is a Colorado limited liability company whose sole member/owner is Great-West Life & Annuity Insurance Company, a corporation incorporated in Colorado with a principal place of business located in Colorado. Empower thus is a citizen of the state of Colorado.

34.    Defendant Empower Advisory Group, LLC, formally known as Advised Assets Group, LLC ("AAG"), is an Oregon limited liability company whose sole member/owner is Great-West Life & Annuity Insurance Company, a corporation incorporated in Colorado with a principal place of business located in Colorado. AAG thus is a citizen of the state of Colorado.

35.    Putnam Investments, LLC ("Putnam") is a Delaware limited liability company whose sole member/owner is Great-West Lifeco Inc., a foreign corporation incorporated in Canada with a principal place of business located in Canada. Putnam thus is a citizen of Canada.

36.    Great-West Funds, Inc. ("GWF") is a corporation incorporated in Maryland with a principal place of business in Colorado. GWF is thus a citizen

of the states of Maryland and Colorado.

37.     Empower Annuity Insurance Company of America, formally known as Great-West Life & Annuity Insurance Company ("GWL"), is a corporation incorporated in Colorado with a principal place of business in Colorado. Great West thus is a citizen of the state of Colorado.

38.     Great-West Lifeco Inc. ("Great-West") is a foreign corporation incorporated in Canada with a principal place of business located in Canada. Great-West thus is a citizen of Canada. Great-West is the holding company for Defendants.

39.     Empower, AAG, GWF, and Putnam are wholly owned subsidiaries of GWL or Great-West.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs seek to certify, and to be appointed as representatives of, the following class and subclasses:

a)  Clients of Empower and/or AAG who are or were invested in a Managed Account from 2015 through the present including:

i.   Government employee clients of Empower and/or AAG whose deferred compensation plans invested in a Managed Account from 2015 through the present; and

ii.  Private and RSG clients of Empower and/or AAG who invested

in a Managed Account from 2015 through the present.

41.   The proposed class meets the requirements of Rule 23(a) for the

following reasons:

a) The class includes hundreds of thousands of members and is so

large that joinder of all its members is impracticable.

b) There are questions of law and fact common to the class including,

without limitation: whether Defendants acted as a fiduciary with

respect to the conduct that is the subject of this complaint; whether

Defendants breached a fiduciary duty; whether Defendants misled

their customers by failing to disclose material information related

to employee bonuses; whether Defendants misled their customers

by failing to disclose material information related to the ownership

of Defendants' Great West and Putnam Funds; determining the

proper remedies for Defendants' violations; and determining the

amount of Defendants' unlawful profits.

c) Plaintiffs' claims are typical of the claims of the class because

each Plaintiffs and all class members are pursuing the same legal

theories arising from the same course of misconduct instituted on

a company-wide basis by Defendants.

d) Plaintiffs are adequate class representatives because they have no interests that conflict with the members of the class, are committed to the vigorous representation of the class, and have engaged experienced and competent attorneys to represent the class.

e) Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to the discharge of their fiduciary duties and liability, and (B) adjudications by individual members would, as a practical matter, be dispositive of the interests of the members not party to the adjudication or would substantially impair or impede those members' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

f) A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable, the losses suffered by individuals may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of

law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, the class may be certified under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

g) Plaintiffs' counsel, Fob James Law Firm, LLC and Foster Law LLC, will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g). Forrest H. James IV, owner and Founding Partner of Fob James Law Firm, LLC, has successfully litigated securities fraud on both the defense and plaintiff side and SEC whistleblower actions. James Foster, the owner and Managing Member of Foster Law LLC, also has experience litigating securities cases, including SEC whistleblower actions, as well as large class action lawsuits.

## CAUSES OF ACTION

### COUNT I: Breach of Fiduciary Duty

42.    Plaintiffs repeats, reiterates and realleges each and every

allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

43.     Plaintiffs hired Defendants to manage Plaintiffs' money in Defendants' Investment Retirement Accounts.

44.     In connection with this advisory relationship it, Defendants served as fiduciaries, who owed the highest duty of loyalty to those on whose behalf they act.

45.     Based on their expertise, the professional services that Defendants were to provide the Plaintiffs, and as a matter of state and federal law, Defendants owed the Plaintiffs a fiduciary duty to act in the utmost good faith and in the best interests of the Plaintiffs.

46.     The Plaintiffs reposed complete trust and confidence in Defendants both to render investment advice in accordance with their age, investment objectives, needs, and risk tolerance, and to conduct themselves at all times with the Plaintiffs' best interests in mind.

47.     The relationship of trust and confidence between Plaintiffs, on the one hand, and Defendants on the other, resulted in a fiduciary relationship.

48.     By reason of their fiduciary relationships, the Defendants owed and owe Plaintiffs the highest obligation of good faith, fair dealing, loyalty, and

due care.

49.     Plaintiffs reasonably relied on the ability of Defendants to act at all times to select investment options for the Plaintiffs that were in their best interests given their age, desire for growth and avoidance of substantial principal losses, and their retirement.

50.     The acts described above constituted a breach of this fiduciary duty, including Section 206 of the Investment Advisors Act, showing complete indifference to and disregard of Plaintiffs' best interests.

51.     As a direct and proximate result of said breach, Plaintiffs have suffered damages.

52.     As a direct and proximate result of breach of fiduciary duty by Defendants, Plaintiffs were damaged in an amount to be proven at trial, and are also entitled to disgorgement of all investment advisory fees paid by the Plaintiffs to Defendants.

53.     In connection with the conduct alleged in this claim, Defendants acted in bad faith and have caused Plaintiffs unnecessary trouble and expense; consequently, Plaintiffs specifically pray for their expenses of litigation including reasonable attorneys' fees.

## COUNT II: Fraudulent Misrepresentation

54.    Plaintiffs repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

55.    Defendants made false and materially misleading representations to the Plaintiffs concerning the services they were providing to the Plaintiffs. These false and materially misleading representations include:

a) Representing its advisors were "non-commissioned" and "salaried." This representation was false because Defendants' advisors were in fact receiving commissions in the form of bonuses. It was also materially misleading because it implied that Defendants' advisors were unbiased and acting in the best interests of Plaintiffs, when in reality they were acting in the bests interests of themselves and their employer.

b) Using the name "AAG" in order to conceal Empower's ownership and affiliation of the Empower-owned Funds. Defendants' representations were materially false and misleading because they failed to adequately disclose the fact that "Advised Assets Group, LLC" is, in fact, owned by the same company that owns

Defendants' recommended Funds.[9]

56.     The aforementioned representations made by Defendants were, in fact, false.

57.     When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

58.     These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs and the class members, and were made with the intent of inducing Defendants' customers to invest in Defendants' Managed Accounts and into Funds owned by Defendants.

59.     Defendants' conduct evinced a callous, reckless, willful, depraved indifference to the best interests of Plaintiffs and their fellow class members.

60.     In August 2022, Defendants finally updated the names in their disclosures to the SEC to reflect Empower, AAG and GWFS's common ownership.

61.     In making the false and materially misleading representations to

---

[9] In August 2022, Defendants amended its disclosures to the SEC to change the name from Advised Assets Group, LLC to Empower Advisory Group, LLC under the guise of "rebranding."

the Plaintiffs, Defendants acted with scienter and an intent to defraud, and with the intention to induce Plaintiffs to move their money into Defendants' Managed Accounts and Funds owned by Defendants.

62.     Defendants held themselves out to Plaintiffs as trusted fiduciaries with superior knowledge and skill with respect to the investments of the portfolios.

63.     Plaintiffs and the class members justifiably relied on Defendants' false and materially misleading representations.

64.     As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs were damaged in an amount to be proven at trial, and are also entitled to disgorgement of all investment advisory fees paid by the Plaintiffs to Defendants.

65.     In connection with the conduct alleged in this claim, Defendants acted in bad faith and have caused Plaintiffs unnecessary trouble and expense; consequently, Plaintiffs specifically pray for their expenses of litigation including reasonable attorneys' fees.

## COUNT III: Fraudulent Omission

66.     Plaintiffs repeat, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with

the same force and effect as if more fully set forth herein.

67.   Defendants made false and materially misleading omissions to the Plaintiffs concerning the services they were providing to the Plaintiffs. These false and materially misleading omissions include:

a)  Failing to adequately disclose Defendants' agents and employees' financial incentives and bonuses. Defendants' omission is materially misleading because it implied that Defendants' advisors were unbiased and acting in the best interests of Plaintiffs, when in reality they were acting in the best interests of themselves and their employer.

b)  Failing to adequately disclose Defendants' conflict of interests with respect to recommending Funds owned by Defendants. Defendants' omission is materially misleading because Plaintiffs and other customers were led to believe that the Funds selected by Morningstar included options that are unaffiliated with Defendants, when in reality the only Funds recommended by Morningstar were owned by Defendants.

68.   When said omissions were made by Defendants, they knew those

omissions to be false and they willfully, wantonly and recklessly disregarded whether the omissions were true.

69.    These omissions were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs and the class members, and were made with the intent of inducing Defendants' customers to invest in Defendants' Managed Accounts and into Funds owned by Defendants.

70.    Defendants' conduct evinced a callous, reckless, willful, depraved indifference to the best interests of Plaintiffs and their fellow class members.

71.    In making the false and materially misleading omissions to the Plaintiffs, Defendants acted with scienter and an intent to defraud, and with the intention to induce Plaintiffs to move their money into Defendants' Managed Accounts and Funds owned by Defendants.

72.    Defendants held themselves out to Plaintiffs as trusted fiduciaries with superior knowledge and skill with respect to the investments of the portfolios.

73.    Plaintiffs and the class members justifiably relied on Defendants' false and materially misleading omissions.

74.    A rebuttable presumption of reliance is deemed to arise when the fraud involves material omissions. *Affiliated Ute Citizens v. United States*, 406

U.S. 128, 153-54 (1972).

75.   As a direct and proximate result of Defendants' fraudulent omissions, Plaintiffs were damaged in an amount to be proven at trial, and are also entitled to disgorgement of all investment advisory fees paid by the Plaintiffs to Defendants.

76.   In connection with the conduct alleged in this claim, Defendants acted in bad faith and have caused Plaintiffs unnecessary trouble and expense; consequently, Plaintiffs specifically pray for their expenses of litigation including reasonable attorneys' fees.

## COUNT IV: Negligent Misrepresentation

77.   Plaintiffs repeat, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

78.   Defendants negligently made false and materially misleading representations and omissions to the Plaintiffs concerning the services they were providing to the Plaintiffs.

79.   The aforementioned representations made by Defendants were, in fact, false.

80.   Defendants also negligently concealed and intentionally omitted

the aforementioned material information.

81.    When said representations and omissions were made by Defendants, they knew, or should have known, those representations and omissions to be false and negligently disregarded whether the representations were true.

82.    These representations and omissions were made by said Defendants for their own self-interest, including inducing Defendants' customers to invest in Defendants' Managed Accounts and into Funds owned by Defendants.

83.    Defendants' conduct was contrary to the best interests of Plaintiffs and their fellow class members.

84.    Defendants held themselves out to Plaintiffs as trusted fiduciaries with superior knowledge and skill with respect to the investments of the portfolios.

85.    Plaintiffs and the class members justifiably relied on Defendants' false and materially misleading misrepresentations and omissions.

86.    As a direct and proximate result of Defendants' negligence, Plaintiffs were damaged in an amount to be proven at trial, and are also entitled to disgorgement of all investment advisory fees paid by the Plaintiffs to

Defendants.

87.     In connection with the conduct alleged in this claim, Defendants

acted in bad faith and have caused Plaintiffs unnecessary trouble and expense;

consequently, Plaintiffs specifically pray for their expenses of litigation

including reasonable attorneys' fees.

## COUNT V: Punitive Damages

88.     Plaintiffs repeat, reiterates and realleges each and every allegation

of this Complaint contained in each of the foregoing paragraphs inclusive, with

the same force and effect as if more fully set forth herein.

89.     Plaintiffs asserts a claim for punitive damages under C.R.S. § 13-

21-102.

90.     Upon information and belief, Defendants engaged in willful,

wanton, malicious, and/or reckless conduct that was done without regard to the

consequences or the best interests of the Plaintiffs and class members and

caused injuries upon Plaintiffs, disregarding their protected right.

91.     Defendants' willful, wanton, malicious, and/or reckless conduct

includes but is not limited to Defendants' numerous material

misrepresentations and omissions to Plaintiffs and the class members.

92.     Defendants have caused significant harm to Plaintiffs and have

demonstrated a conscious and outrageous disregard for his and the class members' best interests with implied malice, warranting the imposition of punitive damages.

### COUNT VI: Violations of § 10(b) of the Exchange Act and SEC Rule 10b-5 (*pled in the alternative*)

93.     Plaintiffs repeat, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

94.     In the alternative, to the extent Defendants contend some or all of Plaintiffs' claims are governed by the Securities and Exchange Act of 1934 and SEC Rules, then Plaintiffs plead multiple violations of the Exchange Act and SEC Rule 10b-5 as fully set forth below.

95.     During the class period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the class period, did (i) deceive the investing public, including Plaintiffs and other class members, as alleged in this Complaint; and (ii) cause Plaintiffs and other members of the class to invest in Defendants' Managed Accounts.

96.     Empower and its Advisors made material misrepresentations and concealed conflicts of interest in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 in the following ways, among others:

a) misrepresented that its Advisors were objective and disinterested fiduciaries acting in the best interest of the client;

b) misrepresented that its Advisors were salaried, non-commissioned and financially disinterested;

c) failing to disclose that Empower's bonus and compensation structure created financial incentives for Advisors to recommend Managed Accounts;

d) failing to disclose that the Managed Account charged higher fees and generated greater revenue than other available alternatives;

e) failing to disclose that its "proprietary software" and Advisors only recommend the Managed Account; and

f) failing to disclose that the Managed Account operator [AAG] and the basket of funds in the Managed Account [Great-West and Putnam funds] share common ownership and financial interest with Empower.

97.    As outlined above, Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a

fraud and deceit upon Plaintiffs and the class to enroll them into Defendants' Managed Accounts in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

98.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Defendants' incentive compensation, biases, conflicts of interest, and self-dealing.

99.   During the class period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that the statements contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

100.   Defendants had actual knowledge of the misrepresentations and omissions of material fact alleged in this complaint, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal their incentive compensation, biases, conflicts of interest, and self-dealing from the investing public in order to enroll Plaintiffs and other class members into Defendants' Managed Accounts.

101.   Defendants clearly knew their misstatements and omissions would induce Plaintiffs and class members to enroll into Managed Accounts. They utilized "pain points" in order to "sell" Plaintiffs and class members on the benefits of Managed Accounts in order to reap bonuses and fees while simultaneously holding themselves out as unbiased fiduciaries acting in the best interest of Plaintiffs and the class.

102.   Unbeknownst to Plaintiffs and the class, Defendants had a significant financial motivation to enroll Plaintiffs and class members into Defendants' Managed Accounts and Funds.

103.   In addition, Defendants recouped numerous fees from enrollment into these accounts and Funds.

104.   Defendants' employees were also incentivized to enroll Plaintiffs and class members into these Managed Accounts based on their bonus structure, incentive compensation, and job retention.

105.   In fact, Defendants went so far as to engage in internal competitions to promote and reward advisors who sold the most people on moving their money into Defendants' Managed Accounts.

106.   Up until recently, Defendants never bothered to inform Plaintiffs or other class members of the fact that AAG, Great West, and Putnam are all

part of the same company — Empower.

107.   Although done under the guise of "rebranding" Defendants' recent decision to change the name of AAG, Great West, and Putnam to reflect their true identity (i.e., Empower) confirms the fact that Defendants' knew what they were doing was misleading. Indeed,  Defendants themselves admit the name changes were "material" in their most recent SEC disclosures.

108.   The fact that Defendants knowingly and recklessly deceived Plaintiffs and other class members to the tune of millions of dollars is more than enough to establish scienter.

109.   Plaintiffs and the class members have suffered damages in that, in reliance on their trusted fiduciaries and  integrity of the market, they paid Managed Account fees, Great West and Putnam Fund fees, and other fees in connection with enrollment into Defendants' Managed Accounts. Plaintiffs and the class would not have enrolled in Defendants' Managed Accounts at the prices they paid, or at all, had they been aware of Defendants' fraudulent course of  conduct   including   their   undisclosed incentive   compensation, biases, conflicts of interest, and self-dealing.

110.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the class suffered damages in connection

with their respective enrollment into Defendants' Managed Accounts during the class period.

111.   By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.

## JURY TRIAL DEMANDED

112.   Under Fed. R. Civ. P. 38 and the Constitution of the United States, Plaintiffs demand a trial by jury. In the alternative, Plaintiffs request an advisory jury on all issues not triable of right by a jury.

## PRAYER FOR RELIEF

113.   Plaintiffs seek entry of judgment on each of their claims and request that the Court order the following relief:

a)   The full payment of other compensatory damages as may be proven at trial;

b)   Pre-judgment interest on all the compensatory damages amounts proven at trial;

c)   Disgorgement of all Managed Account and Fund fees paid to the Defendants;

d)   Punitive damages as appropriate for the causes of action herein alleged;

e)      Attorneys' fees, expenses, and costs; and

f)      Such other relief as the Court deems just and proper.

/s/ *Forrest H. James, IV*
Forrest James IV
**FOB JAMES LAW FIRM, LLC**
2226 1st Ave South, Suite 105
Birmingham, Alabama 35233
Phone: (205) 407-6009

James Z. Foster
**FOSTER LAW LLC**
1201 West Peachtree St, NW, Suite 2300
Atlanta, Georgia 30309
Phone: (404) 800-0050

*Counsel for Plaintiffs*