IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-02716

EVELYN BIRCHFIELD,
individually and as a representative of a class
of similarly situated persons,

        *Plaintiff*,

v.

EMPOWER ADVISORY GROUP, LLC;
EMPOWER RETIREMENT, LLC;
EMPOWER FINANCIAL SERVICES, INC.;
and EMPOWER ANNUITY INSURANCE
COMPANY OF AMERICA,

        *Defendants*.

---

**DEFENDANTS' MOTION TO DISMISS
THE SUPERSEDING COMPLAINT (DKT. 5)**

---

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF THE ALLEGATIONS.......................................................................... 2

    A. Empower's Managed Accounts ............................................................................... 2

    B. Disclosures Regarding Managed Accounts............................................................. 3

    C. Plaintiff's Investments............................................................................................ 4

    D. Plaintiff's Claims ................................................................................................... 5

III. ARGUMENT ................................................................................................................. 5

    A. SLUSA Precludes Plaintiff's Claims .................................................................... 6

        1. Plaintiff's Lawsuit is a "Covered Class Action" Based on State Law............... 6

        2. Plaintiff's Claims Arise from Alleged Misrepresentations or Omissions ......... 7

        3. The Alleged Misrepresentations or Omissions Were Made
        in Connection with the Purchase or Sale" of a Covered Security.......................... 9

        4. Plaintiff's Claims Concern the Purchase or Sale of "Covered Securities"...... 11

    B. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted...................... 12

        1. The Complaint Fails to Plead any Viable Claim for
        Fraudulent or Negligent Misrepresentation or Omission (Claims 3, 4, 5)........... 13

        2. The Complaint Fails to Plead a Claim for
        Breach of Fiduciary Duty (Claim 1) ................................................................... 16

        3. The Complaint Fails to Plead a Claim for Breach of Contract (Claim 7)........ 18

        4. The Complaint Fails to Plead a Claim for
        Aiding and Abetting (Claims 2, 6)....................................................................... 19

        5. The Complaint Fails to Plead a Claim for
        Unjust Enrichment (Claim 8) .............................................................................. 20

IV. CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Am. Verification Processing Sols., LLC v. Elec. Payment Sys., LLC,*
    2021 WL 4555995 (D. Colo. Aug. 13, 2021) ........................................................................20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ...............................................................................................................6

*Anderson v. Edward Jones,*
    990 F.3d 692 (9th Cir. 2021) ................................................................................................10

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
    521 F.3d 1278 (10th Cir. 2008) ..................................................................................5, 6, 9, 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................13, 14, 20

*Borwick v. Univ. of Denver,*
    2013 WL 1149543 (D. Colo. Mar. 18, 2013) ....................................................................18

*Bristol Bay Prods., LLC v. Lampack,*
    312 P.3d 1155 (Colo. 2013)..................................................................................................13

*Cent. Masonry Corp. v. Bechtel Nat., Inc.,*
    857 F. Supp. 2d 1160 (D. Colo. 2012)..................................................................................14

*Chadbourne & Parke LLP v. Troice,*
    571 U.S. 377 (2014)...........................................................................................................9, 10

*Fleming v. Charles Schwab Corp.,*
    878 F.3d 1146 (9th Cir. 2017) .........................................................................................8, 11

*Goldberg v. Bank of Am., N.A.,*
    846 F.3d 913 (7th Cir. 2017) ...............................................................................................11

*Greenway Nutrients, Inc. v. Blackburn,*
    33 F. Supp. 3d 1224 (D. Colo. 2014)....................................................................................13

*Grippo v. Perazzo,*
    357 F.3d 1218 (11th Cir. 2004) ............................................................................................12

*Holtz v. JPMorgan Chase Bank, N.A.,*
    846 F.3d 928 (7th Cir. 2017) .....................................................................................7, 8, 9, 11

*In re Kingate Mgmt. Ltd. Litig.,*
    784 F.3d 128 (2d Cir. 2015)..................................................................................................12

*Lewis v. Scottrade, Inc.*,
    879 F.3d 850 (8th Cir. 2018) ..................................................................................11

*MacKinney v. Allstate Fire & Cas. Ins. Co.*,
    2016 WL 7034977 (D. Colo. Dec. 1, 2016)..............................................................19

*Mandelbaum v. Fiserv, Inc.*,
    787 F. Supp. 2d 1226 (D. Colo. 2011).............................................7, 9, 12, 19, 20

*Merrill Lynch v. Dabit*,
    547 U.S. 71 (2006)..............................................................................................6, 9

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    904 F.3d 821 (9th Cir. 2018) .........................................................................7, 8, 9

*Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*,
    382 P.3d 821 (Colo. 2016)....................................................................................20

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*,
    428 P.3d 567 (Colo. App. 2016) ...........................................................................19

*S.E.C. v. Shields*,
    744 F.3d 633 (10th Cir. 2014) ..............................................................................18

*Scheidt v. Klein*,
    956 F.2d 963 (10th Cir. 1992) ..............................................................................13

*Sender v. Mann*,
    423 F. Supp. 2d 1155 (D. Colo. 2006)...................................................................19

*Sewell v. Great N. Ins. Co.*,
    535 F.3d 1166 (10th Cir. 2008) ......................................................................15, 16

*Straily v. UBS Fin. Servs., Inc.*,
    2009 WL 798830 (D. Colo. Mar. 24, 2009) ...........................................................17

*Transam. Mort. Advs., Inc. v. Lewis*,
    444 U.S. 11 (1979)................................................................................................16

*Vasey v. Martin Marietta Corp.*,
    29 F.3d 1460 (10th Cir. 1994) ..............................................................................18

*W. Distrib. Co. v. Diodosio*,
    841 P.2d 1053 (Colo. 1992)..................................................................................18

*Walker v. Mohiuddin*,
    947 F.3d 1244 (10th Cir. 2020) ............................................................................12

*Waller v. City & Cty. of Denver,*
  932 F.3d 1277 (10th Cir. 2019) ...................................................................12

**STATUTES**

15 U.S.C. § 77r(b)(1) .......................................................................................11

15 U.S.C. § 77r(b)(2) .......................................................................................11

15 U.S.C. § 78bb(f)(1) ...................................................................................7, 11

15 U.S.C. § 78bb(f)(1)(A) .................................................................................1

15 U.S.C. § 78bb(f)(5)(B)(i) ..............................................................................7

15 U.S.C. § 78bb(f)(5)(E) ................................................................................11

15 U.S.C. § 80b–6 ...........................................................................................16

**TREATISES**

Restatement (Third) of Agency § 8.06 (2006) ...............................................17

**REGULATIONS**

Prohibited Transaction Exemption 2020-02, Improving Investment Advice for Workers and
  Retirees, 85 Fed. Reg. 82,798 (Dec. 18, 2020) ..........................................16

# I. INTRODUCTION

The Superseding Complaint attempts to hide a purported securities fraud class action behind state law labels to avoid the rigorous pleading standards that apply under federal securities laws. Congress has prohibited this tactic. The Complaint should be dismissed under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1).

When Plaintiff initially filed this action in October 2022, she expressly asserted a cause of action for securities fraud under Section 10(b) and Rule 10b-5 of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkt. 1 ¶¶93–111. Plaintiff never served the initial complaint and filed the Superseding Complaint 90 days later. Dkt. 5 (the "Complaint"). The Complaint drops the Section 10(b) claim, which would be subject to heightened pleading requirements under the PSLRA, and instead asserts putative class action claims for alleged violations of various state laws. But the Complaint's shift in legal theories is meaningless: the factual allegations remain identical to those previously pled in support of the Section 10(b) claim. And that is fatal. Plaintiff's transparent attempt to circumvent the rigorous requirements that govern federal securities class actions is verboten, and the Complaint should be dismissed with prejudice.

Designed to curb frivolous securities class actions, the PSLRA requires securities plaintiffs to surmount heightened pleading requirements, forbids burdensome discovery unless and until plaintiffs overcome a motion to dismiss, and imposes a mandatory review for sanctions under Federal Rule of Civil Procedure 11. SLUSA prevents plaintiffs from evading these protections by disguising securities class action claims as state-law causes of action. Under SLUSA, courts *must* dismiss class action claims that allege a misrepresentation or omission under state law in connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb(f)(1)(A).

Here, the Complaint attempts to do exactly what SLUSA prohibits. Plaintiff elected to

1

invest through a "Managed Account" offered by Empower Advisory Group, LLC ("Empower"), which gave Empower discretionary authority to invest Plaintiff's assets in mutual funds. Plaintiff alleges a classic securities fraud claim arising from this managed account transaction: Empower misrepresented or omitted material facts regarding Managed Accounts and how it invested Managed Account assets in the underlying securities. Rather than face the PSLRA's stringent pleading requirements, Plaintiff attempts to evade those requirements by packaging her claims under state law. Plaintiff's claims are barred by SLUSA and should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1).

Even setting SLUSA preclusion aside, Plaintiff still fails to plausibly allege any claim upon which relief can be granted. The Complaint, in fact, fails to allege any misrepresentation, omission, or deceptive scheme related to Empower's Managed Accounts. If individuals decided to enroll in a Managed Account, they agreed to terms and conditions that explained Empower's method for investing Managed Account assets and disclosed its potential conflicts of interest and compensation methods. Plaintiff's allegations, along with the documents Plaintiff references in and attaches to her Complaint, contradict Plaintiff's conclusory claims that Empower committed fraud, breached any fiduciary duty, or is subject to any other tort or equitable claim. As a result, even if this Court determines it has subject matter jurisdiction, it should still dismiss Plaintiff's claims with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## II. SUMMARY OF THE ALLEGATIONS

### A.    Empower's Managed Accounts

Empower, Empower Retirement, LLC ("ERL"), Empower Financial Services, Inc. ("EFS"), and Empower Annuity Insurance Company of America ("EAIC") are "related companies

that provide investment and retirement services." ¶3; *see id.* at 2 n.1 (noting name changes).[1]

Empower is a registered investment adviser. Empower communicates with retirement plan participants to understand their investment strategies, goals, risk tolerances, and preferred levels of account oversight. ¶61. For example, participants are asked about when they plan to retire, how frequently they monitor or change investment allocations, and how they feel about investment fluctuations. *Id.* Managed Accounts are one investment solution that may be offered to plan participants under their retirement plan. Dkt. 5-1 (Ex. 1 to Complaint) at 1. If a participant elects to enroll in a Managed Account, she provides information that is put into a software application developed by an independent third-party ("Morningstar"), which returns a recommended investment strategy and selects among the "investment options" to implement that strategy. ¶¶63, 71 (investment options are selected by plan sponsors); Dkt. 5-1 at 2.

By investing through a Managed Account, participants give Empower "discretionary authority over allocating [the participant's] assets among the core investment options." ¶71 (quoting Dkt. 5-1 at 1). A decision to invest through a Managed Account is necessarily a decision to purchase the underlying securities because the "core investment options" to be allocated by Empower consist, in whole or in part, of mutual funds. ¶92. The securities purchased may include "individual funds owned by Empower's sister companies." ¶36.

## B.    Disclosures Regarding Managed Accounts

Before enrolling in a Managed Account, investors agree to Empower's terms and conditions (the "Agreement"). ¶68; Dkt. 5-1. The Agreement cross-references, and thus incorporates, Empower's ADV Disclosure Brochure (the "Brochure"), a publicly available form

---

[1] The following format will be used to cite to paragraphs in the Complaint (Dkt. 5): ¶__. While Defendants dispute the allegations in the Complaint, they are assumed to be true for purposes of this motion. As required under Civ. Practice Standard 7.1B(b), counsel for Defendants conferred with counsel for Plaintiff prior to filing this motion. Counsel for Plaintiff indicated that Plaintiff will oppose this motion.

that provides additional information on Empower's fees, compensation, and conflicts. *Id.* at 6.

**Purchase and Sale of Securities.** The Agreement explains how Empower exercises discretion in managing Managed Account funds, disclosing that its investment "methodology is powered by Morningstar," which "first builds stable, consistent asset allocation models at various risk levels." ¶74 (quoting Dkt. 5-1 at 2). Then, "[b]ased on Monte Carlo simulations of the [participant's] resources [and] liabilities … an appropriate asset level portfolio is selected and a savings rate and retirement age are determined that best suits each user's situation." *Id.* Once the appropriate asset level portfolio is determined, "investment options from the account's menu are [] selected to implement each asset-level model portfolio." *Id.*

**Affiliates and Fees.** Empower's corporate structure and affiliations are disclosed throughout the Agreement. The Agreement begins by disclosing that Empower is a "wholly-owned subsidiary of [EAIC]." Dkt. 5-1 at 1. The Agreement goes on to disclose that Empower charges advisory fees on a quarterly or annual basis. ¶¶83–85; Dkt. 5-1 at 1. The Agreement lists instances in which entities affiliated with Empower may receive fees, including when affiliated entities manage funds "included in the retirement plan investment options." Dkt. 5-1 at 2–4; ¶¶75, 92–94.

**Compensation.** The Agreement directs investors to Empower's Brochure. Dkt. 5-1 at 6. The Brochure discloses the financial incentives provided to advisors associated with Empower, stating they may receive "bonus compensation, in addition to their salary, for communication, education and/or assisting participants to enroll in" Managed Accounts. Ex. A at 15.

## C.   Plaintiff's Investments

Plaintiff alleges that she invested through a Managed Account in or around August 2019. ¶¶19–21. When Plaintiff opened her Managed Account, she "signified [her] consent to be bound by the terms and conditions set forth in [the] Agreement." Dkt. 5-1 at 1–6. By "placing her funds in an Empower Managed Account," Plaintiff granted Empower discretion to invest those funds in

covered securities, including those managed by Empower's affiliates. ¶¶21, 22, 72, 75, 92, 94.

**D.      Plaintiff's Claims**

Bradley Shaffer and Evelyn Birchfield initiated this action by filing a complaint alleging Defendants deceived investors by "luring them" into "high-cost," "managed," "fund-portfolios." Dkt. 1 at 2–4 & n.3. To obtain redress for Defendants' fraudulent "scheme," which allegedly resulted in plaintiffs' investments "underperform[ing]" alternative investments, Shaffer and Birchfield asserted state law claims and federal claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *Id.* ¶¶4, 42–111. This complaint was never served.

Ninety days later, Plaintiff served a "Superseding Complaint." Dkt. 5 (Shaffer dropped out as a plaintiff). Although the Complaint drops the federal cause of action in name, the substantive allegations are identical to those in the original complaint. Purporting to represent a class of "(at least) tens of thousands of individuals," ¶103, Plaintiff asserts claims against Empower for breach of fiduciary duty, fraudulent misrepresentation, fraudulent omission, negligent misrepresentation, and breach of contract. Plaintiff asserts claims against ERL and EAIC for aiding and abetting a breach of fiduciary duty and misrepresentation. Plaintiff asserts a claim for unjust enrichment against Empower, EAIC, and EFS. Each claim should be dismissed with prejudice.

### III. ARGUMENT

SLUSA expressly bars private class actions based on state law claims where the plaintiff alleges a "misrepresentation[] or omission" or "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. *See, e.g.*, *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1287–88 (10th Cir. 2008) ("*Merrill Lynch*"). That is precisely what Plaintiff's lawsuit is—a putative class action asserting state law claims based on allegations that Empower misled or concealed material information related to the purchase of securities. Under settled law, this Court lacks subject matter jurisdiction over Plaintiff's putative class action claims. This case

should therefore be dismissed with prejudice under Rule 12(b)(1).

In addition, the Complaint independently warrants dismissal with prejudice under Rule 12(b)(6). Plaintiff's allegation that Empower deceived investors by only recommending Managed Accounts is entirely conclusory. And Plaintiff fails to adequately allege facts sufficient to state any of her state law causes of action. As a result, even if the Court finds that it has subject matter jurisdiction, the Complaint should still be dismissed in its entirety under Rule 12(b)(6).

## A.    SLUSA Precludes Plaintiff's Claims

Congress enacted the PSLRA to curb abuses associated with securities-fraud lawsuits. Among other things, the PSLRA "imposes heightened pleading requirements," "a stay of discovery pending resolution of any motion to dismiss," and "mandate[s] … sanctions for frivolous litigation." *Merrill Lynch v. Dabit*, 547 U.S. 71, 81 (2006). To avoid these protections, plaintiffs began filing securities class action claims under the guise of state law. Congress closed this loophole and "fortified the PSLRA" by passing SLUSA. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 476 (2013). SLUSA precludes private litigants from bringing "covered class action[s]" based on state law that allege "a misrepresentation or omission" "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).

"[A]n action will be dismissed under SLUSA if it is (1) a 'covered class action,' (2) that is based on a state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) 'in connection with' the purchase or sale of a covered security." *Merrill Lynch*, 521 F.3d at 1281. If these elements are met, SLUSA precludes the claims, "regardless of how artfully or cleverly plaintiffs attempt to plead them." *Id.* at 1286. This action meets each of these elements, epitomizing the type of suit that SLUSA bars.

### 1.    Plaintiff's Lawsuit is a "Covered Class Action" Based on State Law

Plaintiff's lawsuit is a covered class action alleging state law claims. A "covered class

action" is any action where "damages are sought on behalf of more than 50 persons" or the "named parties seek to recover damages on a representative basis." 15 U.S.C. § 78bb(f)(5)(B)(i). Here, Plaintiff seeks "damages," ¶220, "on behalf of herself and [those] similarly situated," ¶16, which Plaintiff estimates "likely consists of (at least) tens of thousands of individuals," ¶103. In her "representative" capacity, Plaintiff asserts state law claims. ¶¶111–218. The first two elements for SLUSA preclusion are, therefore, met.

### 2.    Plaintiff's Claims Arise from Alleged Misrepresentations or Omissions

Plaintiff's Complaint alleges "a misrepresentation or omission of a material fact" or the "use of a[] manipulative or deceptive device." 15 U.S.C. § 78bb(f)(1). When evaluating whether a plaintiff alleges a misrepresentation or omission, courts look to the "essence" of the state law claims "to avoid circumvention of [the PSLRA] by artful drafting." *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1246 (D. Colo. 2011); *see also Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 829 (9th Cir. 2018) (this analysis "does not turn on the name or title given to a claim by the plaintiff"). The "central question" in conducting a SLUSA analysis is whether the complaint alleges conduct that "would be actionable under the [federal securities laws]." *Northstar*, 904 F.3d at 829. Here, the gravamen of the Complaint is that Empower made material misrepresentations or omissions and "schemed" to fraudulently induce investors like Plaintiff to use Managed Accounts. Plaintiff claims that Empower mislead investors into "purchas[ing]" Managed Accounts on the "promise[]" that Empower was "provid[ing] individualized investment advice," ¶¶87–88, that was "in the best interests" of the investors, ¶7, while misrepresenting or failing to disclose material facts and competing private interests, ¶39. "A statement along the lines of 'we will act in your best interest' plus nondisclosure of a competing private interest is the basis of many securities actions." *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017) (holding state law claims against investment manager were precluded under SLUSA).

7

Each of Plaintiff's individual causes of action rest on alleged misrepresentations or omissions. The claims for fraudulent misrepresentation/omission, negligent misrepresentation, and aiding and abetting fraudulent/negligent misrepresentation (Counts 3, 4, 5, 6) do so explicitly: Plaintiff claims that Empower misrepresented or "failed to disclose material facts" to induce Plaintiff to enroll in a Managed Account and misrepresented or concealed how Empower would invest the Managed Account funds. ¶161, *see also* ¶¶140–97.

Plaintiff's fiduciary duty causes of action (Claims 1 and 2) similarly rest on alleged misrepresentations or omissions by claiming that Defendants falsely "represent[ed] that Empower and its advisors were acting in their best interests," ¶124, and making recommendations "to maximize returns" for investors, ¶119, without disclosing that Empower's advice was "conflicted," ¶2, and that Empower was "engaged in self-dealing," ¶127. Where plaintiffs allege that defendants, "motivated by a conflict of interest, deceived" plaintiffs in connection with the purchase or sale of a covered security, the complaint "allege[s] a deceptive practice actionable under federal securities law" and is precluded under SLUSA. *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1154–55 (9th Cir. 2017); *see also Holtz*, 846 F.3d at 932 ("A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law.").

The same is true for Plaintiff's breach of contract and unjust enrichment claims (Claims 7, 8). Plaintiff alleges that Empower breached its Agreement with investors by promising to provide "'personalized,' individualized investment advice," but failing to provide that advice. ¶¶206–08, 211–12. This type of purported breach of contract claim—where "defendants are accused of promising … one thing" while "in fact doing another," *Northstar*, 904 F.3d at 832—falls squarely within SLUSA. In *Holtz*, the Seventh Circuit considered similar allegations that the defendant incentivized its employees to invest client funds in the defendant's own mutual funds under the

guise of providing independent investment advice as a fiduciary. 846 F.3d at 932. The Seventh Circuit held that the alleged breach of contract claims were precluded by SLUSA because "[t]he sort of situation … in which one party to a contract conceals the fact that it planned all along to favor its own interests … is a staple of federal securities law." *Id.* In *Northstar*, the Ninth Circuit similarly concluded that the defendant's promises that it would "follow the stated investment objectives," while allegedly "deviating from those objectives," were misrepresentations and omissions barred by SLUSA. 904 F.3d at 831–32.

Plaintiff's misrepresentation and omission allegations pervade the Complaint. Not only do Plaintiff's causes of action incorporate all of the misrepresentation or omission allegations by reference (¶¶ 111, 131, 140, 160, 177, 188, 198, 210), they allege—as a basis for each cause of action—a misrepresentation, omission, or deceptive device. *Merrill Lynch*, 521 F.3d at 1287–88 (affirming preclusion because "the individual counts themselves allege 'misrepresentation[s] or omission[s]'" or "incorporate[]" those allegations "by reference"); *Mandelbaum*, 787 F. Supp. 2d at 1250 (SLUSA barred state law claims because they "incorporate[d] by reference all preceding allegations in the complaint"). The third element for SLUSA preclusion is also met.

### 3. The Alleged Misrepresentations or Omissions Were Made in Connection with the Purchase or Sale of a Covered Security

The Supreme Court has interpreted SLUSA's "in connection with" requirement broadly. *Dabit*, 547 U.S. at 85; *Mandelbaum*, 787 F. Supp. 2d at 1246. SLUSA's "in connection with" requirement is satisfied if the purported misrepresentation or omission "is material to a decision … to buy or to sell a 'covered security'"—that is, where it "makes a significant difference to someone's decision." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014). "Congress envisioned a broad construction" of this "in connection" requirement, given the "particular concerns" that led Congress to enact SLUSA. *Dabit*, 547 U.S. at 86; *Troice*, 571 U.S. at 392.

According to the Complaint, investors chose to enroll in Managed Accounts "in reliance on Empower's false representations" and omissions. ¶¶1, 21, 43, 97, 105, 149, 150, 157, 161, 165. The entire purpose of the Managed Account was to grant Empower discretion to invest an account holder's money in covered securities, including funds with stocks on the "S&P 500, government bonds, or money market." ¶92. Based on Plaintiff's own allegations, the alleged misrepresentations or omissions were therefore "material" to Plaintiff's decision to purchase covered securities.

In *Troice*, the Supreme Court drew a distinction between misrepresentations that are material to a decision to buy or sell a covered security and those that are not. 571 U.S. at 387–88. The plaintiffs in Troice alleged the defendants helped perpetrate a Ponzi scheme by falsely representing that the uncovered securities the plaintiffs were purchasing were backed by covered securities. *Id.* at 384–85. The Court held that SLUSA did not preclude the plaintiffs' claims because "plaintiffs did not allege that the defendants' misrepresentations led anyone to buy or sell … covered securities." *Id.*; *Anderson v. Edward Jones*, 990 F.3d 692, 705 (9th Cir. 2021) (SLUSA did not preclude fiduciary claims because "[n]owhere do Plaintiffs allege that they would have purchased or sold different covered securities had Edward Jones conducted a suitability analysis").

Unlike the plaintiffs in both *Troice* and *Edward Jones*, here Plaintiff *does* allege that Empower's purportedly deceptive conduct "caused [her] to change [her] trading behavior." *Edward Jones*, 990 F.3d at 705. Plaintiff, for example, alleges that Morningstar generated a misleading model portfolio, and then Empower allocated her assets—in other words, traded covered securities—in accordance with that misleading portfolio. ¶¶89–94. Absent this alleged deception, Plaintiff claims she would not have granted Empower discretionary authority to select among the investment options for her Managed Account, nor authorized Empower to invest in covered securities owned by Empower's affiliates. *See* ¶2 (Plaintiff "could have gotten cheaper

investment products that performed just as well"); ¶36 (Empower's "scheme" "dr[o]ve customers … to individual funds owned by Empower's sister companies, including EFS").

The allegations here are akin to those in recent cases involving a purported breach of the duty of best execution. In those cases—like here—the allegations hinged on alleged misrepresentations or omissions that would impact trading decisions. *See, e.g.*, *Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854–55 (8th Cir. 2018) ("in connection with" standard met where broker did not meet duty of best execution); *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 915–16 (7th Cir. 2017) ("in connection with" standard met where defendant took side payments from mutual funds that it traded without disclosure); *Fleming*, 878 F.3d at 1156 ("in connection with" standard met where Schwab said it obtained best execution when it did not); *Holtz*, 846 F.3d at 932 ("[A] broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not [] a state-law contract or fiduciary-duty problem."). The "in connection with" standard is similarly met in this case.

### 4.     Plaintiff's Claims Concern the Purchase or Sale of "Covered Securities"

Finally, Plaintiff alleges that the misrepresentations or omissions were made in connection with the purchase or sale of a "covered security." 15 U.S.C. § 78bb(f)(1). SLUSA defines "covered security" to mean "a security that satisfies the standards ... specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933." 15 U.S.C. § 78bb(f)(5)(E). Section 18(b), in turn, defines "covered securities" to include securities (i) "qualified for trading in the national market system … or authorized for listing, on a national securities exchange" or (ii) "issued by an investment company that is registered … under the Investment Company Act of 1940." *Id.* § 77r(b)(1)–(2). Here, the investor "puts her assets into a Managed Account, [and] Empower [then] uses those dollars to purchase a basket of individual funds that mirror investments in the broader market, like the S&P 500, government bonds, or money market." ¶92. An allegation that a

defendant "accepted and deposited [the plaintiff's] monies as payment for securities" is enough to "ple[ad] fraud 'in connection with the purchase or sale of any security,'" even when the plaintiff does not contend that "any particular security [was] purchased" with the funds. *Grippo v. Perazzo*, 357 F.3d 1218, 1223–24 (11th Cir. 2004); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 142 (2d Cir. 2015) ("[P]laintiffs … purchased the uncovered shares of the offshore Funds, expecting that the Funds were investing the proceeds in S&P 100 stocks, which are covered securities…. [T]he essential element of SLUSA that requires falsity 'in connection with' a purchase or sale of a covered security is satisfied in this case.").

*     *     *

This lawsuit is a securities case masquerading as a state-law class action. Plaintiff initially filed a complaint seeking relief under federal securities laws. While Plaintiff withdrew her request for that relief in this Complaint, "artful[] or clever[]" pleading cannot be used to make an end run around SLUSA. *Merrill Lynch*, 521 F.3d at 1286. SLUSA precludes Plaintiff's claims and the Complaint should be dismissed with prejudice.

## B.    Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted

Notwithstanding SLUSA, Plaintiff fails to state a viable claim against any Defendant. To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020). In evaluating plausibility, the Court "'need not accept conclusory allegations' without supporting factual averments" or "legal conclusions." *Mandelbaum*, 787 F. Supp. 2d at 1234.[2] The Complaint fails to meet these basic pleading requirements.

---

[2] In evaluating the motion under Rule 12(b)(6), the Court can consider the Complaint and its exhibits, and documents beyond the Complaint if they are central to Plaintiff's claims, referred to by Plaintiff, and authentic. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). Here, the Court can consider the Agreement (Dkt. 5-1) and the Brochure (Ex. A). Both documents are central to Plaintiff's claims, referred to in the Complaint or attached exhibits, and authentic. The Court is not limited in what it can consider when evaluating the motion under Rule 12(b)(1).

1.     **The Complaint Fails to Plead any Viable Claim for Fraudulent or Negligent Misrepresentation or Omission (Claims 3, 4, 5)**

Plaintiff's fraudulent and negligent misrepresentation/omission claims are based on the same alleged conduct. Each claim fails on its own terms.

**Fraudulent Misrepresentation/Omission.** To plead a claim for fraudulent misrepresentation or omission, Plaintiff must allege: (1) false representation or omission of a material fact; (2) knowledge of falsity or concealment by the defendant; (3) ignorance of the falsity/concealed fact by the plaintiff; (4) intent that the misrepresentation/concealed fact be relied upon; and (5) damages. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). To allege fraud, Plaintiff must satisfy heightened pleading requirements under Rule 9(b), which require that Plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Complaint not only fails to meet the heightened pleading requirements necessary to allege a fraudulent statement or omission, it also fails to adequately allege intended reliance or Plaintiff's ignorance of the allegedly false or omitted facts.

*Objective Recommendations.* Plaintiff claims Empower misrepresented that it was providing objective, disinterested, and personalized advice and concealed that it (and the Morningstar software) only recommended Managed Accounts and "slot[ted] customers into one of seven preset asset allocations." ¶¶9–10, 39(a), (e). These allegations are entirely speculative. The Complaint lacks *any* "factual allegations" to support these naked assertions.[3] *See Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1257 (D. Colo. 2014) (dismissing fraud claim that lacked allegations of falsity). It is axiomatic that a complaint cannot "suffice if it tenders naked assertion[s] devoid of … factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] Plaintiff makes several allegations "on information and belief" (¶88), but fails "to set forth the [required] factual basis for [her] belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

*Affiliate Disclosures.* Plaintiff alleges that Empower "conceal[ed]" its corporate affiliations and that its affiliates may receive fees from Managed Account investments. ¶39(f). This allegation fails on the face of the Complaint. Far from concealing its affiliations, Empower repeatedly disclosed its corporate affiliations. The Agreement, for example, starts by describing Empower as "a wholly owned subsidiary of [EAIC]." Dkt. 5-1 at 1, 4. The marketing materials that Plaintiff attaches as Exhibit 2 to the Complaint also disclose—on almost every page—Empower's relevant affiliations. *See generally* Dkt 5-2. In the Agreement, Empower expressly *and repeatedly* states that "[p]articipants/account holders in the Online Investment Advice or the Managed Account services may have allocations in the investment options that result in [Empower's affiliate] receiving compensation." Dkt. 5-1 at 4. The Complaint even quotes this language, admitting "[t]he Agreement acknowledges … that some of the funds Empower will use its discretionary authority to invest Managed Account customers' assets in will result in fees being paid to Empower's affiliate." ¶75. In light of these disclosures, Plaintiff cannot plausibly state a claim for fraudulent misrepresentation or omission.[4] *C.f. Cent. Masonry Corp. v. Bechtel Nat., Inc.*, 857 F. Supp. 2d 1160, 1165 (D. Colo. 2012) (dismissing claims where contract disclosed the information).

*Fees.* Plaintiff claims Empower "conceal[s]" that Managed Accounts charge higher fees and generate greater revenue for Empower and its affiliates than lower-cost alternatives. ¶39(d). This claim fails for two reasons. First, Plaintiff's allegation that Managed Accounts "generate greater revenue for Empower and its affiliates" is speculative. Plaintiff pleads no facts to support this "naked assertion." *Iqbal*, 556 U.S. at 678. Second, far from concealing anything, the Agreement displays the "fees" for each service offered and shows Managed Account fees were

---

[4] *See also* Dkt. 5-1 at 2 ("All securities transactions … are executed by [EFS] for which EFS may receive compensation…. A participant will pay advisory fees for the Managed Account service and to [Empower's affiliate] if [Empower's affiliates' funds] are included in the retirement plan investment options."); *id* at 4 ("Your investment line up and Managed Account allocations may include mutual funds issued by [Empower affiliates].").

higher than the fees for the alternate option offered, here "Online Advice." Dkt. 5-1 at 6.

*Financial Interest.* Plaintiff alleges that Empower misrepresented that advisors associated with Empower were "salaried, non-commissioned, and financially disinterested" in Managed Account enrollments and concealed that its bonus and compensation structure created a financial incentive for Managed Account enrollments. ¶39(b), (c). Plaintiff fails to allege any specific facts that, if true, would show that Empower's statements regarding advisors being "salaried" and "non-commissioned" were false. Plaintiff vaguely alleges that a percentage of the "annual bonus[]" that "advisors typically have received" is based on Managed Account enrollments. ¶54. But Empower discloses its bonus structure for advisors associated with Empower. The Agreement, in fact, directs investors to—and includes a link to—Empower's publicly available Brochure. Dkt. 5-1 at 6. In the Brochure, Empower states that "[Empower] representatives may be indirectly compensated through bonus compensation … for communication, education and/or assisting participants to enroll in [Empower]'s Services." Ex. A at 15. The Brochure describes how advisors' incentive compensation is based on "a combination of factors including the number and quality of customer engagements … and the amount of customer assets retained as result of the engagements." *Id.* Plaintiff cannot allege that Empower "concealed" this small financial interest, nor that Plaintiff was "ignorant" of this fact.

**Negligent Misrepresentation/Omission.** Plaintiff likewise fails to plead negligent misrepresentation. To state a claim for negligent misrepresentation, Plaintiff must allege: (1) misrepresented or false information; (2) made without the exercise of reasonable care; (3) justifiable reliance; and (4) damages. *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008). Plaintiff's claim for negligent misrepresentation/omission is based on the same conduct alleged in her claims for fraudulent misrepresentation/omission. *See* ¶179. As explained, Plaintiff

fails to adequately allege any specific misrepresentation or omission. *See Sewell*, 535 F.3d at 1172 ("We agree with the district court that [defendant] made no false statements … and … [plaintiffs] cannot prove a claim of negligent misrepresentation."). Empower acted in accordance with its disclosures, and Plaintiff was informed of and consented to the potential "conflicts" and the recommendation methodology she now challenges. Moreover, the facts alleged to be "misrepresented" or "concealed" were disclosed publicly and directly to Plaintiff, refuting any claim of justifiable reliance or that Empower intended to induce reliance.

## 2.   The Complaint Fails to Plead a Claim for Breach of Fiduciary Duty (Claim 1)

Plaintiff's breach of fiduciary duty claim is premised on the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b–1, *et seq*. ¶4. The IAA generally prohibits fraudulent practices by investment advisers. 15 U.S.C. § 80b–6; *Transam. Mort. Advs., Inc. v. Lewis*, 444 U.S. 11, 16 (1979). The IAA, however, does not apply prior to the time a fiduciary relationship formed. At the time of the alleged breach, when Empower supposedly convinced Plaintiff to invest through a Managed Account, Plaintiff had not yet enrolled in the Managed Account nor formed the fiduciary relationship with Empower. Still, the IAA does not authorize a private right of action for damages for allegedly fraudulent practices, vesting the SEC with enforcement authority. *Transamerica*, 444 U.S. at 19–25. Plaintiff's breach of fiduciary duty claim is therefore preempted by federal law.[5]

Plaintiff also fails to plead breach of fiduciary duty under state law. To plead a breach of fiduciary duty claim, Plaintiff must show (1) the existence of a fiduciary duty, (2) breach of the fiduciary duty, (3) damages, and (4) proximate cause. *Sewell*, 535 F.3d at 1172. The Complaint

---

[5] Regardless, the conduct alleged by Plaintiff would not be subject to liability under federal law. While the IAA prohibits advisers from engaging in certain "conflicted" transactions, that prohibition is contingent on advisers not making certain disclosures (*see* 15 U.S.C. § 80b–6), which is not the case here. The Department of Labor also provides an exemption to prohibited transactions under ERISA when investment advisers disclose conflicts of interest. *See* Prohibited Transaction Exemption 2020-02, Improving Investment Advice for Workers and Retirees, 85 Fed. Reg. 82,798 (Dec. 18, 2020).

fails to plausibly allege the existence of a duty and any breach.

Plaintiff alleges that Empower breached a fiduciary duty by "engag[ing] in self-dealing and ma[king] recommendations to Plaintiff … that were not in [her] best interests, including by recommending that [she] purchase Empower's Managed Account services, which resulted in Empower paying itself advisory fees and Empower's affiliates … taking fees associated with the underlying funds." ¶127. But a conflict of interest "does not constitute a breach of duty" where the fiduciary "discloses all material facts" concerning the conflict and the "principal consents to the conduct." Restatement (Third) of Agency § 8.06 (2006); *Straily v. UBS Fin. Servs., Inc.*, 2009 WL 798830, at *7 (D. Colo. Mar. 24, 2009) (summary judgment dismissal of breach of fiduciary duty claim where relevant information was disclosed). Empower fully disclosed its Managed Account methodology and any potential conflicts, and invested funds only after receiving acknowledgement and approval of its terms. Dkt 5-1 at 1–6 ("Your use of any service will signify your consent to be bound by the terms and conditions set forth in this Agreement.").

Empower disclosed that assets in Managed Accounts may be invested in funds affiliated with Empower or otherwise result in fees being paid to Empower affiliates. *See supra* at 4, 14–15. Plaintiff cannot allege a breach of fiduciary duty based on "self-dealing" or an alleged conflict that was fully disclosed. Nor has Plaintiff plausibly alleged that Empower breached any duty by recommending a Managed Account. Plaintiff alleges that Empower's Managed Account recommendations were conflicted because they were not the product of "individualized investment advice" and concealed that (1) Empower's "objective software tool [Morningstar] only generates one recommendation: purchase Managed Account[]s," (2) "Empower permits its advisors to make only one recommendation: purchase Empower's Managed Account[s]," and (3) the "Managed Account service simply slots customers to one of seven preset asset allocations." ¶¶9–10. These

conclusory allegations lack "factual allegations" that, if true, would "raise [this] right to relief above the speculative level." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Moreover, Empower disclosed relevant information regarding the basis for its investment recommendations. *See* ¶¶60–63. As alleged in the Complaint, the Agreement has a section titled "Methodology," which explains how Morningstar "builds stable, consistent asset allocation models at various risk levels" and then, based on the information provided by the investor, determines the "asset level portfolio … that best suits each user's situation." ¶74 (quoting Dkt. 5-1 at 2). Even if Empower had not disclosed this information, allegations that it used sophisticated, third-party modeling technology, and asked questions to assess investor needs, would not sufficiently allege a breach of fiduciary duty.

### 3.    The Complaint Fails to Plead a Claim for Breach of Contract (Claim 7)

To plead a breach of contract claim, Plaintiff must allege (1) a contract, (2) performance by Plaintiff, (3) Empower's failure to perform, and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The operative contract is the Agreement, the "valid and binding" contract that Plaintiff agreed to before enrolling in a Managed Account. ¶¶201, 68–69. Plaintiff claims Empower breached the Agreement by not providing "personalized" investment advice, ¶207, and by placing Managed Account investments in funds managed by affiliates, ¶208.

With respect to the first alleged breach, the Agreement's reference to "personalized account management" is too indefinite to create a contractual obligation. A contract must contain terms "sufficiently definite to enable the court to determine whether the contract has been performed." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994). Language that a party will play a "key role" in the contract, or engage in a "very active manner," is too vague and indefinite to form an obligation under a contract. *Borwick v. Univ. of Denver*, 2013 WL 1149543, at *8 (D. Colo. Mar. 18, 2013). Here, in a section about the personal information required for a Managed

Account, the Agreement states that participants will receive an "Annual Kit" that "confirm[s] your personal data which is used to provide you with personalized account management." Dkt. 5-1 at 2. This statement is too indefinite to form the obligation construed by Plaintiff. It outlines no bounds to judge whether a certain number of asset allocations recommended by Morningstar could constitute "personalized" management. Plaintiff fails to allege why Morningstar's purported use of seven preset asset allocations—an allegation made solely "on information and belief"—is not "personalized" or "individualized" according to the biographical and financial information received from participants. Even if this is an enforceable contractual term, Plaintiff has not alleged Empower failed to perform.

With respect to the second alleged breach, Plaintiff cannot plausibly allege that Empower "failed to perform" by investing Managed Account proceeds in funds managed by its affiliates when that possibility was expressly and repeatedly disclosed. *Supra* at 4, 14–15. A plaintiff cannot state a breach of contract claim where, as here, it fails to plausibly allege a failure to perform. *See MacKinney v. Allstate Fire & Cas. Ins. Co.*, 2016 WL 7034977, at *6 (D. Colo. Dec. 1, 2016).

### 4.     The Complaint Fails to Plead a Claim for Aiding and Abetting (Claims 2, 6)

Plaintiff's claims for aiding and abetting against ERL and EAIC are likewise deficient. Under Colorado law, it is well established that "aiding and abetting requires actual knowledge" and "substantial assistance" in the underlying breach or tortious conduct. *Sender v. Mann*, 423 F. Supp. 2d 1155, 1176 (D. Colo. 2006); *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 428 P.3d 567, 577 (Colo. App. 2016); *Mandelbaum*, 787 F. Supp. 2d at 1242. To support its aiding and abetting claims, Plaintiff merely alleges that ERL provided retirees' personal information to Empower, and that EAIC—"as the sole owner of both ERL and Empower"—"facilitated and directed the exchange of … information" and "facilitated and directed Empower's misleading and false statements." ¶¶ 133, 135, 191–93. Plaintiff concludes, without citing to any alleged facts, that

19

both ERL and EAIC "knew" of and provided "substantial assistance" to the alleged misconduct. ¶¶136, 191, 194. Plaintiff offers no facts to indicate how—by providing contact information or being a parent company—ERL or EAIC would have "knowledge" of or substantially assist the alleged misconduct. These vague and "threadbare" allegations are insufficient and should be dismissed. *Iqbal*, 556 U.S. at 678; *Mandelbaum*, 787 F. Supp. 2d at 1242 (dismissing vague aiding and abetting allegations under *Twombly* and Rule 12(b)(6)).

### 5.   The Complaint Fails to Plead a Claim for Unjust Enrichment (Claim 8)

Plaintiff's unjust enrichment claim against Empower, EAIC, and EFS fails for at least three reasons. First, the existence of a contract between Plaintiff and Empower precludes Plaintiff's unjust enrichment claim. *See, e.g.*, *Mandelbaum*, 787 F. Supp. 2d at 1243 ("Plaintiffs have an enforceable contract with Defendants … precluding a claim for unjust enrichment."). Second, to plead unjust enrichment, a plaintiff must allege, among other things, circumstances that would make it unjust for the defendant to retain the benefit. *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). Plaintiff alleges only that EFS and EAIC received "fees" when Plaintiff's Managed Accounts invested in funds managed by EFS (EAIC "indirectly" receiving fees as the parent of EFS). ¶¶214–17. Plaintiff does not allege the type of unjust or inequitable conduct needed to show unjust enrichment. Third, Plaintiff's unjust enrichment claim is based on the same alleged "facts" as its other deficient causes of action, and must fail for the same reasons. *See Am. Verification Processing Sols., LLC v. Elec. Payment Sys., LLC*, 2021 WL 4555995, at *18 (D. Colo. Aug. 13, 2021) (Wang, M.J.) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim," it "will stand or fall with the related claim."). Plaintiff's unjust enrichment claim should be dismissed.

### IV. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: February 15, 2023

Respectfully submitted,

 s/ Monica K. Loseman
Monica K. Loseman
Allison K. Kostecka
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: 303.298.5700
Fax: 303.313.2834
Email: mloseman@gibsondunn.com
Email: akostecka@gibsondunn.com

*Attorneys for Defendants Empower Advisory Group, LLC; Empower Retirement, LLC; Empower Financial Services, Inc.; and Empower Annuity Insurance Company of America*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 15, 2023, I electronically filed Defendants' Motion to Dismiss the Superseding Complaint (Dkt. 5) with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


*s/ Allison K. Kostecka*