IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| EVELYN BIRCHFIELD, individually and as a representative of a class of similarly situated persons, | CIVIL ACTION NO.:1:22-cv-02716 |
| Plaintiff, | COMPLAINT – CLASS ACTION |
| v. | |
| EMPOWER ADVISORY GROUP, LLC; EMPOWER RETIREMENT, LLC; EMPOWER FINANCIAL SERVICES, INC.; and EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA, | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TODEFENDANTS' FEBRUARY 15, 2023 MOTION TO DISMISS THE SUPERSEDING COMPLAINT (DKT. 28)

Forrest James IV
**FOB JAMES LAW FIRM, LLC**
2226 1st Ave South, Suite 105
Birmingham, Alabama 35233
Phone: (205) 407-6009

James Z. Foster
**FOSTER LAW LLC**
1201 West Peachtree St, NW, Suite
2300 Atlanta, Georgia 30309
Phone: (404) 800-0050

Michael A. Caplan
T. Brandon Waddell
Cameron B. Roberts
Katie W. Gamsey
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com
bwaddell@caplancobb.com
croberts@caplancobb.com
kgamsey@caplancobb.com

*Counsel for Plaintiff and the Proposed Class*

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

I.   Defendants' scheme to deceive customers into enrolling in
     Managed Accounts.......................................................................................... 2

II.  Defendants enrich themselves through Managed Accounts. ............................................. 5

III. Defendants deceived Plaintiff Birchfield into enrolling in a
     Managed Account. ........................................................................................ 6

IV.  Plaintiff sues Defendants on behalf of a class of Managed
     Account customers.......................................................................................... 6

ARGUMENT ......................................................................................................... 7

I.   SLUSA does not bar Plaintiff from asserting the state-law claims
     on behalf of the proposed class. ........................................................................ 7

II.  Each count of the Complaint states a viable claim for relief. ......................................... 11

     A.   Plaintiff's fraud and negligent misrepresentation/omission
          allegations are detailed, specific, and sufficient to adequately
          put Defendants on notice. ........................................................................ 11

     B.   Based on well settled law, Plaintiff states a cognizable claim
          for breach of fiduciary duty. ................................................................... 13

     C.   Plaintiff sufficiently alleges ERL and EAIC knowingly and
          substantially aided and abetted Empower's fraud and breach
          of its fiduciary duties. ......................................................................... 17

     D.   Plaintiff has adequately pleaded a breach-of-contract claim. ................................... 18

     E.   Plaintiff sufficiently alleges unjust enrichment. ............................................... 19

CONCLUSION ....................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Am. Verification Processing Sols., LLC v. Elec. Payment Sys., LLC*,
No. 19-cv-02902-RM-NYW, 2021 WL 4555995 (D. Colo. Aug. 13, 2021) ......................... 20

*Anderson v. Edward D. Jones & Co., L.P.*,
990 F.3d 692 (9th Cir. 2021) ...................................................................... 8, 10, 11

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
521 F.3d 1278 (10th Cir. 2008) ...................................................................... 7

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ...................................................................... 13

*Bernard v. BNY Mellon, Nat'l Ass'n*,
No. 2:18-CV-00783-CRE, 2019 WL 2462606 (W.D. Pa. Apr. 25, 2019) ............................. 10

*Bock v. Am. Growth Fund Sponsors, Inc.*,
904 P.2d 1381 (Colo. App. 1995) .................................................................. 20

*Borwick v. Univ. of Denver, Bd. of Trustees*,
No. 11-cv-01216-MSK-KMT, 2013 WL 1149543 (D. Colo. Mar. 18, 2013) ......................... 18

*Brink v. Raymond James & Assocs., Inc.*,
892 F.3d 1142 (11th Cir. 2018) .................................................................... 9

*Chadbourne & Parke LLP v. Troice*,
571 U.S. 377 (2014) .............................................................................. 8, 10

*Durning v. First Bos. Corp.*,
815 F.2d 1265 (9th Cir. 1987) .................................................................... 16

*Fullerton v. Maynard*,
943 F.2d 57 (10th Cir. 1991). ..................................................................... 7

*George v. Urb. Settlement Servs.*,
833 F.3d 1242 (10th Cir. 2016) ................................................................ 11, 13

*Holmes v. Young*,
885 P.2d 305 (Colo. App. 1994) ................................................................... 17

*Johnston v . CIGNA Corp.*,
916 P.2d 643 (Colo. App. 1996) ................................................................... 13

ii

*Mandelbaum v. Fiserv, Inc.*,
  787 F. Supp. 2d 1226 (D. Colo. 2011) ..................................................................... 17

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ..................................................................................................... 10

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp. Inc.*,
  886 F.2d 1249 (10th Cir. 1989) ................................................................................. 14

*Millennium Funding, Inc. v. Priv. Internet Access, Inc.*,
  No. 21-cv-01261-NYW-SKC, 2022 WL 7560395 (D. Colo. Oct. 13, 2022) ........... 10

*Nguyen v. Raymond James & Assocs., Inc.*,
  No. 8:20-cv-195-CEH-AAS, 2021 WL 6091094 (M.D. Fla. Dec. 23, 2021) ............. 9

*Paine, Webber, Jackson & Curtis, Inc. v. Adams*,
  718 P.2d 508 (Colo. 1986) ................................................................................... 13, 14

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977) ..................................................................................................... 4

*SEC v. Ambassador Advisors, LLC*,
  576 F. Supp. 3d 286 (E.D. Pa. 2021) ................................................................... 15, 16

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
  375 U.S. 180 (1963) ................................................................................................... 15

*State ex rel. Udall v. Colonial Penn Ins. Co.*,
  812 P.2d 777 (N.M. 1991) ................................................................................... 13, 14

*Thomas v. ConAgra Foods, Inc.*,
  No. 6:20-CV-006239 EAW, 2021 WL 1176011 (W.D.N.Y. Mar. 29, 2021) ............ 7

*Tuttle v. ANR Freight Sys., Inc.*,
  797 P.2d 825 (Colo. App. 1990) ................................................................................ 19

*United Water & Sanitation Dist. v. Geo-Con, Inc.*,
  488 F. Supp. 3d 1052 (D. Colo. 2020) ...................................................................... 19

*Vasey v. Martin Marietta Corp.*,
  29 F.3d 1460 (10th Cir. 1994) ................................................................................... 18

*Walden v. Bank of New York Mellon Corp.*,
  No. 2:20-CV-01972-CRE, 2021 WL 2317856 (W.D. Pa. June 7, 2021) ................. 10

**Statutes**

15 U.S.C. § 78bb ................................................................................................ 7, 8

**Other Authorities**

Restatement (Third) Of Agency § 8.06 ................................................................ 15

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................... 7

**Regulatory Authority**

*Commission Interpretation Regarding Standard of Conduct for Investment Advisers*,
    United States Securities and Exchange Commission, 17 C.F.R. Part 276,
    Release No. IA-5248 (2019), *available at*
    https://www.sec.gov/rules/interp/2019/ia-5248.pdf ................................... 14, 15, 16

Plaintiff Evelyn Birchfield, as representative for a proposed class, files this brief in opposition to Defendants Empower Advisory Group, LLC ("Empower"), Empower Retirement, LLC ("ERL"), Empower Financial Services, Inc. ("EFS"), and Empower Annuity Insurance Company of America's ("EIAC") Motion to Dismiss the Superseding Complaint. For the reasons below, Defendants' motion to dismiss should be denied.

## <u>INTRODUCTION</u>

Defendants deployed a scheme to deceive unsophisticated customers into purchasing Empower's "Managed Account" investment-advisory services. When pitching these services, Empower's advisors tell customers that they are acting as fiduciaries—providing advice and recommending services based on the customer's best interests. The advisors also emphasize their status as registered investment advisors and tell potential clients that they're not compensated based on commissions for selling services or products—adding a sheen of objectivity to their advice. Indeed, to emphasize their disinterestedness, they tell customers that Empower uses third-party software to determine what kind of account (if any) is in the customers' best interest.

Defendants are lying to these customers. The "advisors" only ever provide one piece of advice—buy Empower investment-advisory services, which enrich Defendants at customers' significant expense. The proprietary software, which supposedly generates individualized solutions, always spits out one recommendation: buy Managed Account services. And despite their representations to the contrary, Empower handsomely rewards its advisors based on the number of customers they convince to purchase Empower investment-advisory services.

Evelyn Birchfield is one of thousands of victims of Defendants' scheme. On behalf of herself and a proposed class, her Superseding Complaint, Dkt. 5 ("Complaint" or "Compl."), alleges that Defendants' scheme gives rise to state-law claims for breach of fiduciary duty,

fraudulent misrepresentation and omission, negligent misrepresentation, breach of contract, and unjust enrichment, as well as liability for aiding and abetting the violation of these duties.

Defendants' motion to dismiss chiefly argues that Plaintiff's claims cannot be maintained on behalf of a class as a result of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). But Defendants are wrong. None of Plaintiff's claims are based on or involve the purchase or sale of a security—they are about Defendants deceiving the class to buy *services* for which Defendants charge fees. Thus, SLUSA's class action bar does not apply.

Defendants also argue that Plaintiff fails to sufficiently plead all her claims. But the Complaint's allegations are robust and describe Defendants' fraudulent scheme in far more than adequate detail to satisfy the requirements of Federal Rules of Civil Procedure 8(a) and 9(b). Defendants' motion should be denied, and this case permitted to proceed on the class's behalf.

## BACKGROUND

### I. Defendants' scheme to deceive customers into enrolling in Managed Accounts.

Empower's "Managed Account" is a fee-based discretionary trading account in which Empower has complete authority to use a customer's assets without any input from the customer. Compl. ¶¶ 10, 72. Empower represents that customers who buy its Managed Account services receive individualized advice and customized investment options. *Id.* ¶ 10. In substance, Empower markets—and customers understand—that when a customer buys into an Empower Managed Account, she is purchasing bespoke investment-advisory services. *E.g.*, *id.* ¶¶ 71–73.

As explained in the Complaint and in more detail below, Managed Accounts are more profitable to Defendants because Empower charges an Investment Advisory Fee and then (without even asking the customer) invests the assets in funds owned by Empower's affiliates, which then charge Fund Fees. *Id.* ¶¶ 36, 40, 93–96. Since at least 2015, Defendants have engaged in a fraudulent scheme to deceive potential retirement investor clients into purchasing

Managed Account investment-advisory services based on false representations by Empower advisors that the recommendation to do so resulted from objective, fiduciary advice. *Id.* ¶ 43.

Each Defendant plays a role in the scheme. ERL has existing relationships with customers who have retirement accounts with ERL. At EAIC's direction, ERL identifies customers who are potential targets for Empower's Managed Account scheme based on the customers' age, employment status, and other personal information. *Id.* ¶ 44. ERL, again at EAIC's direction, provides those customers' personal information and contact information to Empower. *Id.* ¶ 45. Empower then provides the target lists to its advisors, who in turn contact those customers to persuade them to enroll in Managed Accounts. *E.g.*, *id.* ¶¶ 46–47.

Empower often calls these meetings "Retirement Readiness Reviews" or "RRRs,"[1] and their ostensible purpose (as the name suggests) is to advise the customer about their readiness for retirement. *Id.* ¶ 47. But the real goal of these interactions is to convince customers to buy Empower's Managed Account investment-advisory services. *Id.* To ensure this secret purpose is achieved, RRRs are highly choreographed affairs: Empower dictates what advisors say during these calls, conducts mandatory training sessions to teach advisors how to sell Managed Account services, and reviews advisors' "sales pitches" and chastises those whose sales tactics Empower deems insufficiently aggressive. *Id.* ¶¶ 47–50, 56(a)–(b).

Empower also trains its advisors to tell a series of targeted falsehoods during RRRs. First, Empower instructs advisors to tell customers during RRRs that they are providing objective advice in the customer's best interests—in other words, that they are acting as fiduciaries. *Id.* ¶¶ 57–58. In fact, in written guidance, Empower stresses to its advisors the "critical" importance

---

[1] Although Plaintiff understands Empower does not uniformly use the term, Plaintiff uses "RRR" as a shorthand for the "meetings or conversations during which Empower and its advisors make the misrepresentations" described in the Complaint. Compl. ¶ 47.

during RRRs of "set[ting] the expectation at the onset of discussion" that advisors would be "**giving them fiduciary, best interest advice tailored to their individual needs and HELPING THEM IMPLEMENT CHANGES that they may need to make.**" *Id.* ¶ 58.

Second, Empower dictates that its advisors tell customers they are acting as registered investment advisors. *Id.* ¶ 48. That matters. By law, registered investment advisors *must* provide independent, objective advice in the customer's best interest. *E.g.*, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 471 n.11 (1977). And Empower requires that its advisors follow a script that informs customers that, during RRRs, they "may . . . act in the capacity of an Investment Advisor Representative of [Empower], which is a Registered Investment Adviser firm." Compl. ¶ 49.

Third, the "analysis" Empower advisors perform during RRRs is tailored to convey the same false impression of objectivity and best-interest, fiduciary advice. *Id.* ¶ 59. For example, during RRRs, Empower advisors ask customers a series of "Probing Questions" designed, according to Empower, to identify the customer's "pain points" and "landmines." *Id.* ¶ 50; *see also id.* ¶ 61 (listing examples of these questions). The actual and intended effect of these questions is to cause customers concern that they cannot manage their own investments. *See id.* ¶ 62. Advisors then tell customers that, based on their responses, Empower's "proprietary software" will generate a personalized, objective recommendation purportedly in the customer's best interest. *Id.* ¶ 63. The advisors tell customers that this software was created by third-party Morningstar, a nationally known third-party investment-analysis and financial-services firm. *Id.* Despite the appearance of objectivity, however, the software produces only one recommendation: the customer should buy Empower's Managed Account services. *Id.* Likewise, Empower permits its advisors to make only one recommendation—buy Empower Managed Account investment-advisory services—no matter whether doing so is in the customer's best

interest. *Id.* ¶ 66. Empower actively conceals that its proprietary software and advisors can only recommend that customers enroll in Managed Accounts. *Id.*¶ 67.

Finally, Empower publicly advertises and instructs its advisors to emphasize during RRRs that they have no financial incentive to recommend Managed Account services because they are salaried and non-commissioned. *Id.* ¶¶ 50–51. This assertion is false. *Id.* ¶ 52. Empower advisors receive financial incentives, bonuses, commissions, and other compensation based on the value of the assets that they persuade customers to convert into Managed Accounts (called assets-under-management, or "AUM"). *Id.* ¶ 53. For example, between 25–35% of the annual bonuses that Empower advisors in its government-markets division have typically received is based on the AUM transferred into Managed Accounts based on RRRs. *Id.* ¶ 54. And there are sticks as well as carrots. Empower bombards advisors with emails demanding they "sell sell sell." *Id.* ¶ 56(d), (e). And Empower sets a hefty annual quota for Managed Account conversions. *Id.* ¶ 55. Advisors who miss quotas get no bonus at all, receive negative reviews, and are put on "Performance Improvement Plans." *Id.* ¶ 56(f), (g). Indeed, advisors can even be terminated for failing to convert enough AUM into Managed Accounts. *Id.* ¶ 56(h).

## II. Defendants enrich themselves through Managed Accounts.

By inducing customers to buy Managed Account services, Empower enriches itself, its affiliates, and its advisors at the expense and against the best interest of those customers.

First, Empower charges an "Investment Advisory Fee" to all Managed Account customers that it pays to itself. *Id.* ¶ 83. The Investment Advisory Fee is calculated as a percentage of the assets that a customer deposits into the Managed Account (the AUM). *Id.* ¶ 84. For example, one applicable fee schedule shows Empower paying itself an Investment Advisory Fee of up to 0.45% of the AUM the customer deposits into the Managed Account. *Id.* ¶ 85.

Empower also uses its Managed Account service to "double-dip" on fees. *Id* ¶ 91. Without getting consent from the customer, Empower puts Managed Account customers' assets into funds that are owned by Empower's affiliates, including EFS and EAIC. *Id.* ¶ 94. Those funds charge "Fund Fees," which are paid to these Empower affiliates. *Id.* ¶ 93. The Fund Fees can cost customers an additional 80 basis points (0.8%) or more of the AUM customers put into their Managed Accounts. *Id.* ¶¶ 95–96.

In sum, Empower deceives customers into enrolling in Managed Accounts and then it and its affiliates collect as much as 1.35% or more of customers' AUM. *Id.* Thus, by deceiving customers into buying Managed Account investment-advisory services, Empower enriches both itself and its affiliates. *Id.* ¶ 97. None of those amounts would be taken from customers if Empower did not first deceive them into buying Managed Account services. *Id.* ¶ 142.

## III.    Defendants deceived Plaintiff Birchfield into enrolling in a Managed Account.

Defendants' scheme worked on Evelyn Birchfield. In August 2019, Empower's registered investment advisor Jennifer Leonard called Ms. Birchfield. *Id.* ¶ 154. During this call, Ms. Leonard told Ms. Birchfield that she was a registered investment advisor acting on behalf of Empower and that it was in Ms. Birchfield's best interest to purchase Managed Account services. *Id.* Those statements were false, but they had their intended effect. Relying on Ms. Leonard's statements, Ms. Birchfield purchased Empower Managed Account services. *Id.* ¶¶ 155–57. Defendants' deception damaged Ms. Birchfield by costing her fees that she otherwise would not have paid to Empower and its affiliates. *Id.* ¶ 158.

## IV.    Plaintiff sues Defendants on behalf of a class of Managed Account customers.

In January 2023, Plaintiff filed the Superseding Complaint, Dkt. 5 ("Complaint" or "Compl."). The Complaint alleges that the scheme described above gives rise to state-law claims for breach of fiduciary duty, fraudulent misrepresentation and omission, negligent

misrepresentation, breach of contract, and unjust enrichment, as well as liability for aiding and abetting the violation of these duties. *See generally* Compl. ¶¶ 110–218.

Defendants moved to dismiss the superseding complaint on two grounds. Motion to Dismiss ("Mtn."), Dkt. 28.[2] First, Defendants argue that SLUSA, 15 U.S.C. § 78bb(f)(1), bars Plaintiff from pursuing her claims as a class action because, according to Defendants, her claims depend on the purchase of covered securities. Mtn. at 11. Second, Defendants argues Plaintiff fails to state a claim for relief. *Id.* at 17. Neither argument has merit, so the motion should be denied.

## ARGUMENT

### I.  SLUSA does not bar Plaintiff from asserting the state-law claims on behalf of the proposed class.

Defendants' primary argument is that SLUSA, 15 U.S.C. § 78bb(f)(1), bars Plaintiff from asserting her state-law claims[3] on behalf of the proposed class. Mtn. at 11. But SLUSA does not apply because none of Plaintiff's claims involve misrepresentations or omissions "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A)–(B).[4]

---

[2]  In docket citations, Plaintiff uses the pagination assigned by the Court's ECF system.

[3]  Defendants make much of the original complaint's inclusion of a claim under § 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5—a claim that was expressly pled "[i]n the alternative[.]" Original Compl., Dkt. 1 ¶ 94. There was nothing wrong with that; complaints can plead claims in the alternative "regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also, e.g.*, *Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-006239 EAW, 2021 WL 1176011, at *3 (W.D.N.Y. Mar. 29, 2021) ("[P]laintiffs are allowed to assert inconsistent facts in support of alternative claims, and *courts may not construe allegations regarding one claim to be an admission against another*.") (emphasis added and quotation omitted). And even more fundamentally, the Superseding Complaint is the operative complaint, and the "the prior complaint [is] of no legal effect." *Fullerton v. Maynard*, 943 F.2d 57 (10th Cir. 1991).

[4]  Defendants' motion contends, without citation, that SLUSA's class action bar is jurisdictional. *See* Mtn. at 10. Defendants are wrong. The Tenth Circuit applies Rule 12(b)(6), not 12(b)(1), to evaluate motions to dismiss based on SLUSA. *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).

SLUSA provides that no class action based on state-law claims may be maintained based on "a misrepresentation or omission . . . *in connection with the purchase or sale of a covered security*" or "that the defendant used or employed any manipulative or deceptive device or contrivance *in connection with the purchase or sale of a covered security*." 15 U.S.C. § 78bb(f)(1)(A)–(B) (emphasis added). "[A] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014).

Courts applying this standard regularly hold that allegations related to *account type*—like those at issue in this case—do *not* have the required connection to the purchase of sale of securities. For example, in *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 745 (2022), the plaintiffs had accounts with Edward Jones that charged commissions on each trade rather than as a percentage of AUM. *Id.* at 696. Edward Jones deceived the plaintiffs and the class into switching to an account that charged higher fees based on AUM (like Empower's Managed Account) without any analysis as to whether such an account suited the customers (just as here). *Id.* at 696–98, 704. The Ninth Circuit rejected an argument that SLUSA barred class claims based on that misconduct. *Id.* at 705. Allegations about fees based on account type, the Court held, lacked the required material connection to the purchase or sale of a security. "Choosing a . . . specific type of account," the court explained, "is fundamentally different than choosing to buy or sell a covered security." *Id.* at 706.

The *Edward Jones* decision is consistent with decisions across the country, which hold that misrepresentations about account type—like those here—are not covered by SLUSA. As the Eleventh Circuit held, "the choice of a type of investment account . . . is not intrinsic to the

investment decision itself." *E.g.*, *Brink v. Raymond James & Assocs., Inc.*, 892 F.3d 1142, 1148–49 (11th Cir. 2018). And while misrepresentations about account fees might "influence[] a reasonable investor's decision to pick [one type of account] over another type of account, that does not make the alleged representation 'material' under SLUSA." *Id.*; *see also Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-cv-195-CEH-AAS, 2021 WL 6091094, at *2, 6 (M.D. Fla. Dec. 23, 2021) (rejecting SLUSA argument because class allegations of misrepresentations related to the transfer of assets from commission-based trading account to fee-based account did not involve a connection to the purchase or sale of covered securities).

As these cases demonstrate, the Complaint's allegations are not materially connected to the purchase of a covered security—so SLUSA does not apply. Like the complaints in *Edward Jones*, *Brink*, and *Nguyen*, all of which involved misrepresentations related to a choice of account type, the Complaint alleges that Defendants engaged in a fraudulent scheme to enroll customers in Managed Accounts and that Defendants *then* used those Managed Accounts to directly collect Investment Advisory Fees and indirectly collect Fund Fees by investing customer assets in affiliated funds (without any customer choice at all.) *E.g.*, Compl. ¶ 142. The misrepresentations at issue here are not material to the purchase of any securities by Plaintiff or any other class member. *Edwards Jones*, 990 F.3d at 704, 706; *Brink*, 892 F.3d at 1148–49.

That Defendants also failed to disclose that Managed Account assets would be invested in affiliated funds does not change the analysis. Concealing that most or all of the available investment options when a customer bought Managed Account services were conflicted, affiliated funds is a misrepresentation about the nature of the *account*, not the purchase or sale of some security. In any event, Empower, not class members, purchased the securities—without even consulting Plaintiff or the class members. "[T]he 'connection' requirement in SLUSA must

be a connection 'that matters' and thus the necessary purchase or sale of a covered security 'must be [by] a party other than the fraudster.'" *Bernard v. BNY Mellon, Nat'l Ass'n*, No. 2:18-CV-00783-CRE, 2019 WL 2462606, at *6 (W.D. Pa. Apr. 25, 2019) (quoting *Troice*, 571 U.S. at 388), *report and recommendation adopted*, No. 2:18-CV-00783-NBF-CRE, 2019 WL 2492293 (W.D. Pa. June 14, 2019). Consistent with this reasoning, in *Walden v. Bank of New York Mellon Corp.*, No. 2:20-CV-01972-CRE, 2021 WL 2317856, at *4 (W.D. Pa. June 7, 2021), the court held that SLUSA did not bar class claims about a concealment that client assets would be invested by BNY Mellon in affiliated funds. *Id.* at *4. The same is true here.

None of the cases cited by Defendants points the other way. *See* Mtn. at 14–16. For one thing, neither Supreme Court case cited by Defendants involved misrepresentations related to account type. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 75 (2006) (addressing claim that investment researchers issued overly optimistic appraisals of value of certain stocks to increase the value of the stock of the firm's investment banking clients); *Troice*, 571 U.S. at 384 (holding class action related to Ponzi-scheme not barred by SLUSA because scheme did not involve the purchase of securities). And while Defendants also cite *Edward Jones*, as discussed above, that case supports Plaintiff's position because it holds that "[c]hoosing a . . . specific type of account is fundamentally different than choosing to buy or sell a covered security." *Edward Jones*, 990 F.3d at 706.[5]

Because there is no connection between the misrepresentations alleged and the purchase

---

[5] At best, Defendants might argue that, while other Circuits have addressed and rejected their position, the Tenth Circuit has not yet done so. But as this Court recently explained, even where the law on an issue is "unsettled," that just means the question is "more appropriately definitively determined at a later stage in the proceedings," not at the pleadings stage. *Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, No. 21-cv-01261-NYW-SKC, 2022 WL 7560395, at *19 (D. Colo. Oct. 13, 2022) (Wang, J.).

or sale of a covered security, SLUSA does not bar Plaintiff's class claims. [6]

## II.    Each count of the Complaint states a viable claim for relief.

Defendants also argue that each count of Plaintiff's complaint fails to state a claim for

relief. Mtn .at 12. Those arguments should be rejected too.

### A.    Plaintiff's fraud and negligent misrepresentation/omission allegations are detailed, specific, and sufficient to adequately put Defendants on notice.

Defendants argue that the Complaint's fraudulent and negligent misrepresentation and

omission claims against Empower should be dismissed. Mtn. at 18–21. Defendants' arguments

suffer from two main defects. First, Defendants pluck individual allegations from the Complaint

and, shorn of context, criticize their insufficiency. Second, Defendants mischaracterize the

Complaint's factual allegations—which are detailed and specific—as "naked assertions." *See id.*

at 19–20.[7] Fairly read, the allegations are more than sufficient to plead fraudulent and negligent

misrepresentation and omission with particularity.

"Rule 9(b)'s purpose is to afford a defendant fair notice of a plaintiff's claims and the

factual grounds supporting those claims." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1255

(10th Cir. 2016) (quotation omitted). To satisfy Rule 9(b), "a complaint must set forth the time,

place and contents of the false representation, the identity of the party making the false

---

[6]    Defendants also suggest that Plaintiff's claims "are akin to those in recent cases involving a purported breach of the duty of best execution." Mtn at 11. But nothing in the Complaint relates to any defect in *executing* trades for covered securities. So as other Courts have held, the best-execution cases are irrelevant. *See Edward Jones*, 990 F.3d at 706–07 (finding best-execution cases irrelevant to allegations related to fees charged based on account type).

[7]    Defendants' position seems to be that the Complaint not only has to provide factual allegations of Defendants' fraudulent conduct that satisfies Rule 9(b)'s particularity requirement but also must include factual allegations about how Plaintiff learned of Defendants' misconduct. For instance, the Motion characterizes the Complaint's allegation that Empower "only recommended Managed Accounts" as "entirely speculative" and a "naked assertion" unsupported by "*any* 'factual allegations[.]'" Mtn. at 18. But that Defendants only ever recommended Managed Accounts *is* a factual allegation. *E.g.*, Compl. ¶ 39(e). Nothing more is required—and that allegation (and all others) must be taken as true.

statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotation omitted). If a complaint's allegations don't meet these requirements, "courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *George*, 833 F.3d at 1255. In those circumstances, Rule 9(b)'s requirements are relaxed. *Id.*

The facts alleged in the Complaint provide more than enough to put Defendants on fair notice of the fraud Plaintiff alleges under Rules 8(a) and 9(b). Plaintiff alleges (i) that Ms. Leonard misrepresented to Ms. Birchfield during an August 2019 call that she was providing objective, fiduciary advice that it was in Ms. Birchfield's best interest to buy Managed Account investment-advisory services and (ii) that, in reliance on those statements, Ms. Birchfield purchased those services. *See* Compl. ¶¶ 18–22, 154–58, 170–75. Those allegations tell Defendants precisely who, what, when, and where their agent defrauded Plaintiff. And the Complaint alleges that similar, specific misrepresentations were made during a specific type of meeting for every other class member—indeed, the Complaint even uses Defendants' own internal name for those interactions. *E.g.*, *id.* ¶¶ 39(a)–(f), 141, 148. [8] The Complaint even details the training Empower gave its advisors specifically related to the relevant misrepresentations. *E.g.*, *id.* ¶ 57. And it alleges precisely when and how each class member justifiably relied on these statements —when they enrolled in Managed Accounts—and how they were damaged as a result of fees that Empower took to enrich itself and its affiliates. *E.g.*, *id.* ¶¶ 150, 152, 166, 168 175, 184, 190.

---

[8]    To counter one of the allegations related to concealment, Defendants point to disclosures in the customer agreement. Mtn. at 14–15. But as explained *infra* at 15–16, those disclosures are insufficient, particularly in light of the affirmatively misleading statements made during RRRs.

In other words, even for absent putative class members, the Complaint's allegations tell

Empower who made the misrepresentations (Empower's investment advisors, *id.* ¶¶ 37–39), the

content of the misrepresentations and omissions (*id.* ¶ 39(a)–(f)), and when the

misrepresentations were made (during RRRs with customers, *id.* ¶¶ 44–50, 58–60). Especially

before any discovery has changed hands, nothing more is required. *See George*, 833 F.3d at 1255

(recognizing that Rule 9(b)'s strictures are relaxed for information that is not within the

plaintiff's possession). Defendants' motion to dismiss Plaintiff's fraudulent and negligent

misrepresentation and omission claims should be denied.

### B. Based on well settled law, Plaintiff states a cognizable claim for breach of fiduciary duty.

Defendants also make two arguments for dismissing the Complaint's breach-of-fiduciary

duty claim against Empower. Both arguments fail, so Defendants' motion should be denied.

First, Defendants contend the Complaint asserts a claim under the Investment Advisors

Act ("IAA") and then argue the IAA does not create a private right of action. Mtn. at 21. That

argument fails off the blocks because the Complaint alleges a common-law breach of fiduciary

duty claim under Colorado law, not under the IAA. *See* Compl. ¶¶ 112–30 (alleging common-

law fiduciary duty claim); *see also id.* ¶ 79 (providing that Colorado law governs).[9] The IAA is

relevant because, as Colorado courts (and courts elsewhere) have agreed, a person's status as a

registered investment advisor imposes fiduciary duties on that person as a matter of state

common law. *Johnston*, 916 P.2d at 647; *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d

470, 500–04 (3d Cir. 2013) (discussing practice of using IAA to supply duty for common-law

---

[9]     Without citation, Defendants suggest that the IAA preempts state-law fiduciary duty claims. Mtn. at 21. In reality, registered investment advisors are regularly sued and held liable for the violation of fiduciary duties. *E.g.*, *Johnston v . CIGNA Corp.*, 916 P.2d 643, 647 (Colo. App. 1996); *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 516 (Colo. 1986); *see also State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 785 (N.M. 1991).

fiduciary duty claim); *Udall*, 812 P.2d at 785 (holding status as a registered investment advisor meant defendant owed fiduciary duties for state-law fiduciary-duty claim). As Colorado courts have long held, as a matter of state law, "an investment advisor owes a fiduciary duty to his or her customers." *Johnston*, 916 P.2d at 647 (citing *Adams*, 718 P.2d at 516).[10]

Defendants also argue that, even if a duty existed, Empower did not breach that duty. Mtn. at 22–23. But in making those arguments, Defendants improperly narrow Plaintiff's claims to merely Empower's investment of customer assets into affiliated funds. *Id.* at 23. Defendants do not even address Plaintiff's central allegation—that Defendants induce customers to buy Managed Account services that are *not* in customers' best interests to enrich themselves. *See id.* at 22–23. That conduct alone breached Empower's fiduciary duties. *E.g.*, Compl. ¶¶ 9, 64–65; *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, United States Securities and Exchange Commission, 17 C.F.R. Part 276, Release No. IA-5248, at 18 (2019), *available at* https://www.sec.gov/rules/interp/2019/ia-5248.pdf ("Commission Interpretation") ("An adviser's fiduciary duty applies to all investment advice the investment adviser provides . . . , including advice about . . . account type" such as "advice about whether to open or invest through a certain type of account . . . and advice about whether to roll over assets from one account (*e.g.*, a retirement account) into a new or existing account"). This is the breach

_____

[10] Of course, Plaintiff also alleges other reasons why a fiduciary duty exists here. For example, Empower's advisors hold themselves out as providing advice in the customer's best interest and represent that they have expertise, and the customers are unsophisticated. *E.g.*, Compl. ¶¶ 1, 37; *see Adams*, 718 P.2d at 521 (considering similar factors and concluding that a fiduciary relationship existed); *see also MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp. Inc.*, 886 F.2d 1249, 1257–58 (10th Cir. 1989) (holding a fiduciary duty existed because broker "held himself out . . . as a securities broker-dealer with expertise in the area of this transaction and who had knowledge of [plaintiff's] specific needs") (applying Oklahoma law).

that led to the damages Plaintiff identifies—*i.e.*, Defendants taking Investment Advisory and Fund Fees from Plaintiff and members of the putative class. Compl. ¶ 142.

Even with respect to Empower's breach by investing in conflicted funds, Defendants' sole argument is that the breach is cured because Defendants supposedly disclosed that they planned to double-dip on fees. Mtn. at 22–23. But stating abstractly that Empower's affiliates "may receive compensation" *after* Defendants have already deceived customers into purchasing Managed Account services that virtually guarantee Empower's affiliates will receive high fees on most or every dollar a customer provides to Empower does not satisfy Empower's fiduciary duty to disclose conflicts of interest. *See generally* Restatement (Third) Of Agency § 8.06 cmt. b (2006) (explaining that "a broadly sweeping release of an agent's fiduciary duty may not reflect an adequately informed judgment on the part of the principal"). Rather, as a fiduciary, an advisor must "eliminate or at least expose through *full* and fair disclosure all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested." *Commission Interpretation* at 23 (emphasis added). "In order for disclosure to be full and fair, it should be sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent." *Id*. at 24. "If an investment adviser stands to benefit financially from transacting on behalf of his client, then the adviser must disclose 'that benefit and all related details of the transaction.'" *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 294 (E.D. Pa. 2021) (quoting *Belmont*, 708 F.3d at 503); *see also SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 197–201 (1963) (requiring advisors to make a "full and frank" disclosure of conflicts). "A client's consent to a conflict will not be effective unless the adviser discloses *all material facts* that would reasonably

affect the client's judgment." *Ambassador Advisors*, 576 F. Supp. 3d at 294 (citing Restatement (Third) of Agency § 8.06(1)(a)(ii)) (emphasis added).[11]

Taking the Complaint's allegations as true, Defendants fall well short of this standard. *See* Compl. ¶¶ 74–78. In particular, the disclosure misleadingly suggests that Managed Account services "may" result in Empower affiliates "receiving compensation from the investment options[.]" *Id.* ¶ 75. This misleading disclosure downplays the fact that Empower invests most— and in many cases *all*—Managed Account assets in affiliated funds. *Id.* ¶ 94. Courts and the SEC have both recognized that the misleading use of "may" when it comes to disclosure of conflicted fees can make a disclosure inadequate. *See Ambassador Advisors*, 576 F. Supp. 3d at 296 (denying summary judgment for a defendant advisor on ground that a jury could find that its disclosure that it "may" receive 12b-1 fees was inadequate); *Commission Interpretation* at 18 & n.60 (collecting cases when the SEC has brought enforcement actions over the misleading use of "may" in disclosures particularly when the conflict is known to in fact exist and the disclosure does not adequately describe those circumstances). That's just one example of the defects in the disclosure, underscoring why adequacy of disclosure is usually a question of fact that cannot be resolved on the pleadings. *See Ambassador Advisors*, 576 F. Supp. 3d at 300; *see also Durning v. First Bos. Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987) ("Like materiality, adequacy of disclosure

---

[11]   Empower's purported disclosure of its advisors' financial incentives is even more plainly inadequate. *See* Mtn. at 9, 20. In a separate brochure, Empower suggested its "representatives *may* be *indirectly* compensated . . . for . . . assisting participants to enroll in [Empower's] services." Dkt. 28-2 at 16 (emphasis added). But Plaintiff expressly alleges Empower "*directly* compensated" advisors for convincing customers to buy its investment-advisory services. *E.g.*, Compl. ¶ 54. Moreover, the next sentence in the purported disclosure misleadingly states that Empower's advisor compensation is "unrelated to an account holder's adoption of investment products or services offered through [ERL]." *Id.* As the Complaint alleges, many class members were ERL customers being contacted by an ERL affiliate about purchasing products with their ERL funds. *E.g.*, Compl. ¶¶ 17–22, 154–158. At the very least, this disclosure was not "full and frank," as the Supreme Court and SEC have both indicated is required.

is normally a jury question."). The Complaint adequately states a claim for breach of fiduciary duty against Empower, and Defendants' motion should be rejected.

### C. Plaintiff sufficiently alleges ERL and EAIC knowingly and substantially aided and abetted Empower's fraud and breach of its fiduciary duties.

Plaintiff alleges ERL and EAIC aided and abetted Empower's breach of fiduciary duties and fraudulent and negligent misrepresentations and omissions. Defendants argue those counts fail because the Complaint supposedly does not sufficiently allege that ERL and EAIC had knowledge of and provided substantial assistance to Empower's misconduct. Mtn. at 24–25.

But the Complaint's allegations of substantial assistance and knowledge are detailed and specific. The Complaint alleges that ERL "provided personal information about its customers [to Empower] knowing that Empower would utilize that information to contact Plaintiff and members of the of the Class" and to deceive them into opening Managed Accounts. Compl. ¶ 190; *see also id.* ¶¶ 6, 18, 35–37. And the Complaint alleges ERL "identifie[d]" vulnerable "targets" for Empower's fraudulent pitch. Compl. ¶ 44. The Complaint also alleges that EAIC directed the scheme with full knowledge—*i.e.*, that it "facilitated and directed the exchange of customer personal information from ERL to Empower" and "knew that Empower would mislead Plaintiff and members of the Class . . . ." *Id.* ¶¶ 193–94; *see also id.* ¶¶ 18, 42, 44–45. Such allegations of substantial assistance and knowledge are more than sufficient. *See Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994) (holding aiding and abetting exists when "party . . . performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation").

Defendants' reliance on *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226 (D. Colo. 2011), is misplaced. *See* Mtn. at 24–25. There, the allegations were bare recitations of the

elements of the cause of action and sought to hold a corporate parent liable for no reason other than it was the corporate parent. *Mandelbaum*, 787 F. Supp. 2d at 1236, 1242. Here, by contrast, the Complaint alleges that EAIC, the corporate parent of ERL and Empower, "directed" ERL to provide customer information to its corporate sister Empower and that both companies knew about how Empower intended to misuse that customer information—and actively facilitated (and profited from) that misconduct. Compl. ¶¶ 190–94. Those allegations readily state an aiding and abetting claim.

### D.  Plaintiff has adequately pleaded a breach-of-contract claim.

Plaintiff's claim that Empower breached its contracts with her and the class members also states a claim. Remarkably, Empower's primary argument on that claim is that the promise *it drafted* into its contracts with customers that they were purchasing "personalized" investment advice is "too indefinite" to be enforced. Mtn. at 23. But there is no uncertainty in what Empower agreed to provide—advice that was personalized and made by an investment advisor, not cookie-cutter allocations made by a robot. In any event, neither case Empower cites supports its argument. First, neither case involved a decision on the pleadings—both were made with the benefit of *evidence* about the meanings of the terms at issue. *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (directed verdict after trial); *Borwick v. Univ. of Denver, Bd. of Trustees*, No. 11-cv-01216-MSK-KMT, 2013 WL 1149543, at *1 (D. Colo. Mar. 18, 2013) (decision at summary judgment). And neither involved a contract: *Vasey* involved whether an offer was accepted so as to lead to promissory estoppel. 29 F.3d at 1464. And *Borwick* involved an attempt to enforce "general policy" statements in a graduate studies manual. 2013 WL 1149543, at *8. By contrast, the provision Plaintiff seeks to enforce is the central promise in what the parties agree is the governing contract—the services Plaintiff contracted to purchase

from Empower. Under settled Colorado law, "[w]hether the language of a promise is sufficiently clear . . . is a matter for the jury to decide." *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo. App. 1990). Empower offers no reason to depart from that commonsense rule here.

Empower also argues Plaintiff cannot plead Empower breached its contracts by acting to benefit itself because it disclosed its conflicts. Mtn. at 24. But as noted above, Empower's general disclosures were not sufficient. *See supra* at 15–17 & n.11. And Empower expressly incorporated its obligation to act in the best interests of Plaintiff and the class members into its contracts. Compl. ¶ 204. Empower never disclosed that most or all of the funds it would put customers' assets into would result in Empower's affiliates being paid exorbitant fees. That failure breached the obligation to act in customers' best interests that Empower wrote into its own contracts. Thus, Defendants' motion to dismiss the breach-of-contract claim should be denied.

### E. Plaintiff sufficiently alleges unjust enrichment.

Finally, Defendants argue Plaintiff's unjust-enrichment claim fails for three reasons. Mtn. at 25. All three arguments should be rejected.

First, Defendants argue that the existence of a contract between Plaintiff and Empower precludes Plaintiff from asserting the unjust-enrichment claim. Mtn. at 25. This argument misses the mark for at least two reasons. For starters, the Complaint does not allege the existence of contracts between class members and EFS and EAIC. Defendants cite no case where a contract with one defendant required dismissal of an unjust-enrichment claim against another. And even with Empower, the Complaint alleges the unjust-enrichment claim in the alternative, Compl. ¶ 211, which Defendants can't dispute is permissible. *E.g.*, *United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058 (D. Colo. 2020) (holding that the Federal Rules allow the alternative pleading of contract and unjust-enrichment claims).

Second, Defendants argue the unjust enrichment claim fails because, in their view, the Complaint alleges only that EFS and EAIC received Fund Fees but "does not allege the type of unjust or inequitable conduct needed to show unjust enrichment." Mtn. at 25. This argument fails for a few reasons. To begin, the unjust enrichment claim is also pled against Empower because it would be inequitable for Empower to retain the Investment Advisory Fees that it took. Compl. ¶¶ 212–13. And even with EAIC and EFS, it would be inequitable for them to retain Fund Fees they received only as a result of Empower's fraud. *Id.* ¶ 217. It is well-established that "[i]nnocent third party recipients of benefits must sometimes surrender them if such benefits are the result of fraud." *Bock v. Am. Growth Fund Sponsors, Inc.*, 904 P.2d 1381, 1386 (Colo. App. 1995). "[R]etention of the benefits [of fraud] . . . is particularly unwarranted" when the third party knows of the inequitable conduct. *Id.* Thus, even if EFS and EAIC did nothing inequitable (which Plaintiff certainly does not concede), they would still have to turn over money they only received because of Empower's inequitable conduct. *See* Compl. ¶ 216.

Finally, Defendants argue that Plaintiff's unjust enrichment claim must be dismissed because the other causes of action (*e.g.*, breach of fiduciary duty and fraudulent misrepresentation) fail and Plaintiff's unjust enrichment claim is based on the same conduct. Mtn. at 25. But this argument cuts the other way. As the case cited by Defendants says, "if any unjust enrichment claim rests on the same improper conduct alleged in another claim," it "will *stand* or fall with the related claim." *Am. Verification Processing Sols., LLC v. Elec. Payment Sys., LLC*, No. 19-cv-02902-RM-NYW, 2021 WL 4555995, at *18 (D. Colo. Aug. 13, 2021) (Wang, M.J.) (emphasis added). Here, all the claims *stand* together, and Defendants' motion to dismiss should therefore be denied.

## CONCLUSION

For all these reasons, Defendants' motion to dismiss should be denied.

Respectfully submitted this 8th day of March, 2023.

*/s/ T. Brandon Waddell*
Michael A. Caplan
T. Brandon Waddell
Cameron B. Roberts
Katie W. Gamsey
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com
bwaddell@caplancobb.com
croberts@caplancobb.com
kgamsey@caplancobb.com

Forrest James IV
**FOB JAMES LAW FIRM, LLC**
2226 1st Ave South, Suite 105
Birmingham, Alabama 35233
Phone: (205) 407-6009

James Z. Foster
**FOSTER LAW LLC**
1201 West Peachtree St, NW, Suite 2300
Atlanta, Georgia 30309
Phone: (404) 800-0050

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

This 8th day of March, 2023.

*/s/ T. Brandon Waddell*
T. Brandon Waddell
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*bwaddell@caplancobb.com*

*Counsel for Plaintiff and the Proposed Class*