IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-02716

EVELYN BIRCHFIELD,
individually and as a representative of a class
of similarly situated persons,

       *Plaintiff*,

v.

EMPOWER ADVISORY GROUP, LLC;
EMPOWER RETIREMENT, LLC;
EMPOWER FINANCIAL SERVICES, INC.;
and EMPOWER ANNUITY INSURANCE
COMPANY OF AMERICA,

       *Defendants*.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE SUPERSEDING COMPLAINT**

---

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

    A. SLUSA Bars Plaintiff From Asserting Her State Law Claims
      As Class Action Claims ...................................................................................... 2

        1. Precedent Holds that SLUSA Bars Plaintiff's State Law Claims ..................... 3

        2. Plaintiff Cannot Evade SLUSA Through Arguments
          about Account Type and Discretionary Trading Authority ............................... 6

    B. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted ..................... 10

        1. Fraudulent or Negligent Misrepresentation or Omission (Claims 3, 4, 5) ....... 10

        2. Breach of Fiduciary Duty (Claim 1) .............................................................. 11

        3. Breach of Contract (Claim 7) ....................................................................... 13

        4. Aiding and Abetting (Claims 2, 6) ................................................................ 14

        5. Unjust Enrichment (Claim 8) ....................................................................... 15

III. CONCLUSION ........................................................................................................... 15

i

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Edward D. Jones & Co., L.P.*,
990 F.3d 692 (9th Cir. 2021) ....................................................................................3, 6, 7

*Anderson v. Merrill Lynch*,
2007 WL 9734031 (D.N.M. Apr. 4, 2007) ...............................................................3

*Anderson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
521 F.3d 1278 (10th Cir. 2008) ...........................................................................1, 3, 4, 6

*Anwar v. Fairfield Greenwich Ltd.*,
118 F. Supp. 3d 591 (S.D.N.Y. 2015)......................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................2, 10, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................10

*Bernard v. BNY Mellon, National Association*,
2019 WL 2462606 (W.D. Pa. Apr. 25, 2019).........................................................10

*Bock v. American Growth Fund Sponsors, Inc.*,
904 P.2d 1381 (Colo. App. 1995) .........................................................................15

*Brink v. Raymond James*,
892 F.3d 1142 (11th Cir. 2018) ............................................................................6, 8

*Chadbourne & Parke LLP v. Troice*,
571 U.S. 377 (2014)............................................................................................8, 10

*Conrad v. The Educ. Res. Inst.*,
652 F. Supp. 2d 1172 (D. Colo. 2009)...................................................................11

*Dommert v. Raymond James Financial Services, Inc.*,
2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ......................................................8, 9

*Gorsuch, Ltd. v. Wells Fargo Nat. Bank Ass'n*,
830 F. Supp. 2d 1202 (D. Colo. 2011)...................................................................11

*Hampton v. Pac. Inv. Mgmt. Co. LLC*,
869 F.3d 844 (9th Cir. 2017) ................................................................................3

*Holtz v. JPMorgan Chase Bank, N.A.*,
846 F.3d 928 (7th Cir. 2017) ................................................................................9

*Leonard v. PeachCap Tax & Advisory, LLC*,
   2022 WL 774866 (N.D. Ga. Feb. 3, 2022) ........................................................9, 10

*In re Lord Abbett Mut. Funds Fee Litig.*,
   553 F.3d 248 (3d Cir. 2009)...............................................................................3

*Mandelbaum v. Fiserv, Inc.*,
   787 F. Supp. 2d 1226 (D. Colo. 2011).................................................4, 5, 6, 15

*Marchak v. JPMorgan Chase & Co.*,
   84 F. Supp. 3d 197 (E.D.N.Y. 2015) ................................................................3

*Nguyen v. Raymond James & Assocs., Inc.*,
   2022 WL 4553068 (M.D. Fla. Aug. 12, 2022) ...............................................8, 11

*Nguyen v. Raymond James*,
   2021 WL 6091094 (M.D. Fla. Dec. 23, 2021)..................................................6, 7

*SEC v. Ambassador Advisors, LLC*,
   576 F. Supp. 3d 286 (E.D. Pa. 2021) ...............................................................13

*Tuttle v. ANR Freight Sys., Inc.*,
   797 P.2d 825 (Colo. App. 1990) .....................................................................14

*United Water & Sanitation District v. Geo-Con, Inc.*,
   488 F. Supp. 3d 1052 (D. Colo. 2020).............................................................15

*Walden v. Bank of New York Mellon Corporation*,
   2021 WL 2317856 (W.D. Pa. June 7, 2021).....................................................10

## STATUTES

15 U.S.C. § 78bb(f)(1)(A)........................................................................................1

# I. INTRODUCTION

Plaintiff's Opposition confirms that this lawsuit is an attempt to evade the PSLRA with groundless claims.[1] Not only are Plaintiff's state law claims jurisdictionally barred by SLUSA, they independently fail on the facts alleged. The Complaint should be dismissed with prejudice.

With respect to SLUSA, the only disputed issue pending before the Court is whether the alleged misrepresentations or omissions were made "in connection with" the purchase or sale of covered securities—here the mutual funds purchased with Plaintiff's Managed Account assets. 15 U.S.C. § 78bb(f)(1)(A). The Complaint demonstrates that they were, alleging that the purported misrepresentations caused Plaintiff to change her investment behavior by investing in funds that she would have otherwise avoided. And, contrary to Plaintiff's representation, the law in the Tenth Circuit is far from "unsettled" on this point. The Tenth Circuit has rejected a narrow interpretation of the statutory phrase "in connection with the purchase or sale of a covered security," holding such an interpretation "squarely conflict[s] with the congressional preference for national standards for securities class action lawsuits." *Anderson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 521 F.3d 1278, 1283 (10th Cir. 2008) ("*Merrill Lynch*"). Plaintiff not only ignores this Tenth Circuit precedent, she overstates the holdings in the few cases she relies upon in her attempt to avoid SLUSA. Where, as here, the elements of SLUSA are satisfied, state law class action claims are precluded, irrespective of cleverly disguised allegations or artful arguments.

The Opposition also demonstrates that the Complaint should be dismissed for failure to state a claim. While Plaintiff argues that the allegations in the Complaint are "robust," "detailed," and "must be accepted as true," the complaint itself shows otherwise. Plaintiff provides no detail or specificity for her "central allegation" that Empower only and always recommends Managed

---

[1] Abbreviations and capitalized terms that are not defined in this reply have the same meaning provided in Defendants' Motion to Dismiss the Superseding Complaint (Dkt. 28).

Accounts, Dkt. 30 at 14; ¶9, and it is axiomatic that "naked assertion[s]" are not sufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only well-pleaded allegations must be accepted as true and the Complaint lacks well-pleaded allegations.

Moreover, Plaintiff states no cognizable claim. The disclosures here foreclose any claim that Empower breached contractual or fiduciary duties, fraudulently or negligently misled customers, or was unjustly enriched in any way. Plaintiff does not dispute that Empower made specific disclosures that refute the alleged misrepresentations and omissions at issue. Nor can Plaintiff meaningfully dispute that she received and consented to those disclosures before investing—that is made clear in the documents attached to the Complaint. And the Opposition confirms that the allegations pleaded in support of the aiding and abetting claims merely recite the elements of those claims, which is not enough to survive a motion to dismiss under Rule 12(b)(6).

This is the second complaint Plaintiff has filed in this action that contains basic, but fatal, flaws.[2] Plaintiff's claims are precluded by SLUSA and should be dismissed for lack of jurisdiction under Rule 12(b)(1). Additionally, Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

## II. ARGUMENT

### A.   SLUSA Bars Plaintiff From Asserting Her State Law Claims As Class Action Claims

The Complaint should be dismissed under SLUSA because it is "(1) a 'covered class action,' (2) that is based on a state law, (3) alleging a misrepresentation or omission of a material fact or use of … [a] deceptive device … (4) 'in connection with' the purchase or sale of a covered

---

[2] Plaintiff argues that "Defendants make much" of the fact that the original complaint includes a cause of action under federal securities law, claiming there is nothing wrong with pleading claims in the alternative. Dkt. 30 at 7 n.3. By pleading federal securities law claims—in the alternative or otherwise—Plaintiff recognizes that the conduct alleged gives rise to federal securities claims. And regardless of the attempt to artfully plead around this fact in the Superseding Complaint, Plaintiff's claims cannot proceed as a class action if they give rise to federal securities claims. That is the very purpose of SLUSA.

security." *Merrill Lynch*, 521 F.3d at 1287–88. Plaintiff does not contest that this lawsuit is a (1) covered class action, (2) based on state law, (3) alleging misrepresentations, omissions, or the use of a deceptive device. *See* Dkt. 30 at 7–11. Nor does Plaintiff contest that Managed Account assets were used to purchase "covered securities." *Id.*; *see also* Dkt. 28 at 11–12. The only issue in dispute is whether Plaintiff's claims allege a misrepresentation, omission, or deceptive device *"in connection with"* the purchase of the covered securities.

### 1.    Tenth Circuit Precedent Holds that SLUSA Bars Plaintiff's State Law Claims

Plaintiff's SLUSA arguments ignore Tenth Circuit precedent and instead rest on mischaracterizations of nonbinding case law from courts in the Ninth and Eleventh Circuits.[3]

In *Merrill Lynch*, the Tenth Circuit examined and opined on SLUSA. In that case, the plaintiffs asserted various state law claims based on allegations that "Merrill Lynch induced [a company's CEO] to open [a] margin loan account, secured by … shares of [the company's] stock, and then liquidated those shares, flooding the market and driving down the price of [the company's] stock." 521 F.3d at 1283. The district court dismissed the complaint with prejudice, finding plaintiffs' claims were "clearly barred by SLUSA." *Anderson v. Merrill Lynch*, 2007 WL 9734031, at *4 (D.N.M. Apr. 4, 2007). In a decision that is not only binding but illustrative here, the Tenth Circuit affirmed that dismissal, rejecting a narrow interpretation of the statutory phrase "in connection with the purchase or sale of a covered security" and holding that a "narrow

---

[3] Plaintiff's SLUSA argument cites a single Tenth Circuit case, and does so in a footnote that erroneously contends the Tenth Circuit "applies Rule 12(b)(6) … to evaluate motions to dismiss based on SLUSA." Dkt. 30 at 7 n.4 (citing *Merrill Lynch*, 521 F.3d at 1284). While the Tenth Circuit did not directly address whether SLUSA dismissals are governed by Rule 12(b)(1) or 12(b)(6) in *Merrill Lynch*, that opinion plainly implies that SLUSA raises a question of subject matter jurisdiction. *See* 521 F.3d at 1282 ("[T]he jurisdiction conferred upon the federal courts by SLUSA is … limited to determining whether [SLUSA] precludes the plaintiffs' claims."). The vast majority of courts that have directly addressed this issue agree: "dismissals under SLUSA are jurisdictional" and properly evaluated under Rule 12(b)(1). *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 847 (9th Cir. 2017); *see also, e.g.*, *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 699 (9th Cir. 2021); *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009); *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 598–99 (S.D.N.Y. 2015); *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 205 (E.D.N.Y. 2015).

interpretation of SLUSA would 'squarely conflict with the congressional preference for national standards for securities class action lawsuits.'" *Merrill Lynch*, 521 F.3d at 1283.

Like here, the claims in *Merrill Lynch* involved opening an account to purchase and sell securities (there, a margin account for which securities were pledged as collateral). *Id.* In addition, in *Merrill Lynch,* as here, the plaintiffs' theory of liability was inextricably intertwined with the purchase or sale of securities. There, the plaintiffs alleged a deceptive scheme and the nondisclosure of the margin account secured by stock caused them to hold their own stock when they otherwise would have sold it before Merrill Lynch flooded the market. Here, Plaintiff alleges she was induced to open an advisory account and purchase securities, including securities that supposedly generated transaction fees on top of advisory fees ("double-dipping"). Where the elements of SLUSA are satisfied, state law class action claims are precluded, "regardless of how artfully or cleverly plaintiffs attempt to plead them." *Id.* at 1286.

Plaintiff's contention that the law in the "Tenth Circuit" is "unsettled" on SLUSA's "in connection with" requirement is demonstrably false. Dkt. 30 at 10 n.5. Plaintiff does not address *Merrill Lynch*, and similarly ignores this Court's decision in *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226 (D. Colo. 2011). In *Mandelbaum*, the putative class action complaint alleged that the defendants—who administered self-directed IRAs held by the plaintiffs—violated various state laws when they sent the plaintiffs' funds to Bernard Madoff's brokerage firm for investment. *Id.* at 1232. The plaintiffs, like Plaintiff here, argued that SLUSA did not apply because the alleged misrepresentations or omissions were not made "in connection with" the purchase or sale of a covered security. *Id.* at 1246. The Court rejected that argument, holding that courts "have interpreted the 'in connection' element broadly" and outlining four "guideposts" to determine whether the "in connection with" element of SLUSA had been satisfied:

(1) whether the covered class action alleges a "fraudulent scheme" that "coincides" with the purchase or sale of securities; (2) whether the complaint alleges a material misrepresentation or omission …; (3) whether the nature of the parties' relationship … necessarily involves the purchase or sale of securities; and (4) whether the prayer for relief "connects" the state law claims to the purchase or sale of securities.

*Id.* Like in *Mandelbaum*, all four guideposts are satisfied here.

Plaintiff's covered class action alleges a fraudulent scheme connected to the purchase of securities. In *Mandelbaum*, the Court explained that a scheme coincides with the purchase or sale of securities if a plaintiff "submitted funds to the defendant with the understanding that such funds would be used to purchase securities." *Id.* at 1246–47. Here, Plaintiff does not—and cannot—dispute that she provided funds to Empower with the understanding that those funds would be used to purchase covered securities: "when a customer puts her assets into a Managed Account, Empower uses those dollars to purchase a basket of individual funds that mirror investments in the broader market, like the S&P 500, government bonds, or money market." ¶92.

Plaintiff admits that her Complaint alleges material misrepresentations or omissions. Dkt. 30 at 1. And Plaintiff cannot contest that the nature of her relationship with Empower necessarily involved the purchase or sale of securities. Plaintiff alleges that, "[i]n August 2019, an Empower representative … contacted [her]" and indicated "that she was an investment advisor and that she was providing advice in [Plaintiff's] interest," ¶19, that will purportedly "maximize [her] investment returns," ¶6. "Based on these representations," Plaintiff alleges that she "plac[ed] her funds in an Empower Managed Account," ¶21, and Empower "use[d] those dollars to purchase a basket of individual funds that mirror investment in the broader market," ¶92. Like in *Mandelbaum*, the relationship between Plaintiff and Empower "served the purpose of trading securities." 787 F. Supp. 2d at 1247. Finally, by seeking compensatory damages and disgorgement of the fund fees, ¶¶94–95, 220, Plaintiff's requested relief connects her state law claims to the purchase of covered securities. *Mandelbaum*, 787 F. Supp. 2d at 1247 (similar prayer for relief).

Far from the issue being "unsettled," both *Merrill Lynch* and *Mandelbaum* require a broad interpretation of SLUSA's "in connection with" requirement and compel the conclusion that SLUSA bars Plaintiff's claims. The Complaint should be dismissed.

### 2.    Plaintiff Cannot Evade SLUSA Through Arguments about Account Type and Discretionary Trading Authority

Relying entirely on nonbinding cases from outside this Circuit, Plaintiff makes two arguments in an attempt to avoid SLUSA. But even if this matter is not decided under Tenth Circuit precedent, Plaintiff's arguments would still fail.

**Account Type.** Plaintiff argues that "decisions across the country" "regularly hold" that "allegations related to account type … do *not* have the required connection to the purchase of [sic] sale of securities." Dkt. 30 at 8. Plaintiff cites to just three cases—*Anderson v. Edward Jones*, 990 F.3d 692 (9th Cir. 2021); *Brink v. Raymond James*, 892 F.3d 1142 (11th Cir. 2018); and *Nguyen v. Raymond James*, 2021 WL 6091094 (M.D. Fla. Dec. 23, 2021)—to support this broad conclusion and both overstates and misstates the relevant holdings.

In *Anderson* and *Nguyen*, the plaintiffs alleged that the defendants were negligent and/or breached fiduciary duties by transferring the plaintiffs from commission-based trading accounts to fee-based trading accounts without first conducting a suitability analysis. *Anderson*, 990 F.3d at 696–97; *Nguyen*, 2021 WL 6091094, at *1. The plaintiffs in both cases alleged that their investment strategy was to buy and hold investments. As a result, they paid modest per-transaction fees in the commission-based accounts, but when they were switched to fee-based accounts, their fees increased despite the fact that their underlying investment strategy and trading patterns remained the same. *Anderson*, 990 F.3d at 697; *Nguyen*, 2021 WL 6091094, at *1.

Plaintiff selectively quotes *Anderson* for the broad proposition that "[c]hoosing a broker or specific type of account is fundamentally different than choosing to buy or sell a covered security."

990 F.3d at 706. But *Anderson's* core SLUSA holding did not rest on allegations about "account types." Rather, the determining factor was the "lack of modification of Plaintiffs' investment strategies," which "suggests that the lack of suitability analysis did not materially affect the purchase or sale of any covered securities." *Id.* at 705. That reasoning similarly motivated the decision in *Nguyen.* 2021 WL 6091094 at *6 (the complaint did not "allege a connection between the deceptive scheme and the sale or purchase of securities"). It has no applicability here.

Here, Plaintiff *does* allege a direct connection between the alleged misrepresentations or deceptive scheme and the purchase of covered securities. In other words, Plaintiff claims that her investment strategy and the underlying securities purchased *did change* based on the alleged misrepresentations. *See* ¶¶ 2, 156, 161, 165. Indeed, the defining feature of a Managed Account is that Empower (by way of the Morningstar software) will recommend and purchase a specific investment portfolio, and reinvest those securities as market and life changes occur over time. Dkt. 5-1 at 1–2; ¶¶8–10. Although Plaintiff tries to plead around this reality, her allegations only underscore it. The Complaint alleges that Empower misrepresented that its investment recommendations were in the best interest of the customer, concealed that Morningstar's investment recommendations were limited to one of seven preset allocations, and concealed that Managed Account assets would be invested in funds that share common ownership with Empower. ¶¶39, 77–78. Unlike the plaintiffs in *Anderson* and *Nguyen*, Plaintiff would not have granted Empower authority to invest her assets in any covered securities, nor invested in Empower's affiliated funds, absent the alleged misrepresentations. ¶2 (Plaintiff "could have gotten cheaper investment products" elsewhere), 152, 158, 165 (misrepresentations "induce[d] [Plaintiff] to take a course of action [she] would not otherwise have taken"); Dkt. 30 at 6 (Empower's "deception" cost Plaintiff "fees that she otherwise would not have paid to" Empower's affiliates). Thus, even

under the reasoning in *Anderson* and *Nguyen* the misrepresentations alleged were "material to a decision … to buy or sell a 'covered security'" and are precluded by SLUSA. *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014).

The facts alleged in *Brink* are also different from the facts alleged here. In *Brink*, the plaintiff alleged that Raymond James breached its fiduciary duties to, and contracts with, investors by representing that its "Passport Account" charged a flat "Processing Fee" *solely* for "transaction execution and clearing services" when the actual cost incurred in the execution and clearing of trades was lower than the Processing Fee. *Brink*, 892 F.3d at 1144–45. Like in *Anderson* and *Nguyen*, *Brink* held that SLUSA did not preclude the plaintiff's claims because the alleged misrepresentation regarding the Processing Fee "objectively could not make a significant difference to a reasonable investor's decision to purchase or sell a covered security." *Id.* at 1149. As discussed above, however, Plaintiff's Complaint hinges on alleged misrepresentations and omissions intrinsic to the purchase and sale of covered securities, and Plaintiff acknowledges the alleged misrepresentations *did* make a significant difference to her investment decisions.[4]

The facts alleged here regarding Empower's Managed Accounts are more similar to district court decisions that Plaintiff ignores. For example, in *Dommert v. Raymond James Financial Services, Inc.*, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007), the plaintiff similarly alleged she entered into an "Investment Management Service Agreement" that was "wrought with conflicts" and "undisclosed financial incentives." *Id.* at *2. The plaintiff argued that the "in connection with" prong of SLUSA was not met because her claims were "about the relationship between her and the [investment adviser] and not about the purchase and sale of securities." *Id.* at *11. The court

---

[4] The fact that no class asserting the type of allegations made in *Anderson*, *Brink*, or *Nguyen* has ever been certified illustrates why *even those claims* are not appropriate for class treatment. *See Nguyen v. Raymond James & Assocs., Inc.*, 2022 WL 4553068, at *5–15 (M.D. Fla. Aug. 12, 2022) (holding "the highly individualized nature of the determinations that are needed to establish liability" are "fatal" to class certification).

rejected this argument, holding allegations "that the [d]efendants failed to disclose key information about charged fees and conflicts of interest are directly related to the … purchase and sale of securities." *Id.* In *Leonard v. PeachCap Tax & Advisory, LLC*, 2022 WL 774866 (N.D. Ga. Feb. 3, 2022), the plaintiff also alleged that a registered investment adviser abused its authority by taking "unauthorized and undisclosed commissions" and charging "unnecessary and excessive costs." *Id.* at *2. The court held SLUSA barred the plaintiff's claims because they rested on allegations that the defendants managed and invested plaintiff's assets and received undisclosed kickbacks or payments "in connection with" the sale of securities, which "is the exact type of omission in connection with the sale of securities contemplated by SLUSA." *Id.* at *2, *6. Plaintiff's claims are also exactly the type of claims contemplated, and barred, by SLUSA.

Finally, Plaintiff makes little effort to discuss, much less distinguish, most of the cases cited in Defendants' Motion to Dismiss, arguing only that the best execution cases are irrelevant because there are no execution allegations in the Complaint. Dkt. 30 at 11 n.6. Plaintiff misses the point. Like the allegations in the best execution and other cases cited in the Motion, Plaintiff alleges that she would have purchased different underlying securities absent the alleged misrepresentations. Plaintiff's claims, therefore, are precluded by SLUSA: "If she wants to pursue a contract or fiduciary-duty claim under state law, she has only to proceed in the usual way: one litigant against another." *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 933–34 (7th Cir. 2017) (holding SLUSA applied when plaintiff "contend[ed] that no sane investor would have purchased the security (or the investment advice) if the truth [about conflicts] had been told").

**Discretionary Trading Authority.** Plaintiff briefly argues that SLUSA's "in connection with" requirement cannot be met because "Empower, not class members, purchased the

securities." Dkt. 30 at 9.[5] This argument misstates both the relationship between Empower and Plaintiff and the law. When Empower invests Managed Account assets in securities, it does so on behalf of its customers—who remain the beneficial owners of the assets and investments. Plaintiff, therefore, falls within the group of plaintiffs traditionally covered by SLUSA, those "who took … or who maintained an ownership interest in financial instruments that fall within the relevant statutory definition." *Troice*, 571 U.S. at 388; *see also Leonard*, 2022 WL 774866, at *6 (rejecting that SLUSA cannot apply to discretionary trading accounts).

**B.** **Plaintiff Also Fails To State A Claim Upon Which Relief Can Be Granted**

**1.** **Fraudulent or Negligent Misrepresentation or Omission (Claims 3, 4, 5)**

Plaintiff's Opposition confirms the fatal flaw of her fraud-based claims: the Complaint fails to plausibly allege any false or misleading statement or omission, much less a deceptive scheme. Plaintiff argues that a single allegation—that "Defendants only ever recommended Managed Accounts"—sufficiently (and with "particularity") alleges claims for fraudulent and negligent misrepresentations or omissions. Dkt. 30 at 11 & n.7 (arguing this "*is* a factual allegation …. Nothing more is required—and that allegation … must be taken as true"). Plaintiff is mistaken. The Court must only accept "well-pleaded" allegations as true. *Iqbal*, 556 U.S. at 679. Plaintiff's allegations are not "well-pleaded," and epitomize the type of conclusory assertions that fail to raise a right to relief beyond mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Complaint, in fact, fails to provide the "factual enhancement" needed to support the allegation that Plaintiff was deceived at all with respect to the Managed Account investment methodology, strategy, or underlying investments. While the Complaint contains some allegations

---

[5] The cases cited by Plaintiff do not support this proposition. In *Bernard v. BNY Mellon, National Association*, 2019 WL 2462606, at *6 (W.D. Pa. Apr. 25, 2019), the defendant was a trustee and the plaintiffs were "powerless to buy or sell" securities. In *Walden v. Bank of New York Mellon Corporation*, 2021 WL 2317856, at *4 (W.D. Pa. June 7, 2021), the fact that plaintiffs granted discretionary trading authority to defendants was irrelevant to the holding.

about Empower—including that it provides training and gives feedback to representatives, ¶56, and instructs representatives to ask typical retirement planning questions, ¶61—these allegations do not make Plaintiff's misrepresentation claims plausible. This court cannot draw a "reasonable inference" that Empower is liable for the misconduct alleged where Plaintiff provides no factual basis to draw such an inference. *See Conrad v. The Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1182 (D. Colo. 2009) (dismissing claims that lacked specific allegations).

The Opposition generally ignores Defendants' remaining arguments regarding the insufficiency of Plaintiff's misrepresentation/omission claims. In a footnote, Plaintiff argues that she has alleged a fraudulent omissions theory because the disclosures attached to the Complaint— which reveal the allegedly omitted information—are "insufficient." Dkt. 30 at 12 n.8. "[I]t has long been held that allegations do not overcome contradictory facts in attached written instruments." *Gorsuch, Ltd. v. Wells Fargo Nat. Bank Ass'n*, 830 F. Supp. 2d 1202, 1206 (D. Colo. 2011). Thus, Plaintiff's half-hearted argument regarding the sufficiency of Empower's disclosures cannot overcome the plain terms in those documents. Plaintiff does not state a claim for fraudulent or negligent misrepresentation or omission, and those claims should be dismissed.

### 2.    Breach of Fiduciary Duty (Claim 1)

The Opposition does not save Plaintiff's breach of fiduciary duty claim. To begin, Plaintiff misrepresents the Complaint by arguing "the Complaint alleges a common-law breach of fiduciary duty claim under Colorado law." Dkt. 30 at 13. Nowhere in the Complaint does Plaintiff so allege. *See* ¶¶112–30. While the Complaint alleges a Colorado choice-of-law provision in the Agreement, that provision does not extend to noncontract claims.[6] Plaintiff concedes that the Complaint alleges

---

[6] Defendants cited Colorado law for this Motion but do not concede that Colorado law applies to all claims and reserve all rights on choice-of-law issues. *Cf. Nguyen*, 2022 WL 4553068 at *13 (denying class certification in part due to applicability of differing state laws on tort claims).

that the Investment Advisors Act ("IAA") "imposes fiduciary duties" on registered investment advisers, Dkt. 30 at 13, and does not contest that—per the IAA—no fiduciary relationship had formed at the time of the breach alleged here, *see id.*; Dkt. 28 at 16. Plaintiff has not sufficiently alleged the first element of any breach of fiduciary duty claim: the existence of a duty.

In addition, Plaintiff still fails to demonstrate that the Complaint sufficiently alleges a breach. Defendants explained, and Plaintiffs do not dispute, that a conflict of interest does not constitute a breach where the fiduciary discloses all material facts concerning the conflict and the principal consents to the conduct. Dkt. 28 at 17–18. While Plaintiff argues that the disclosures are irrelevant to Plaintiff's "central allegation—that Defendants induce customers to buy Managed Account services that are not in customers' best interests to enrich themselves," Dkt. 30 at 14— the Complaint lacks alleged facts that support Plaintiff's "central allegation." Plaintiff has not plausibly alleged that, when offered, Empower's Managed Accounts and the recommended investment portfolio were "not in customers' best interests." *See supra* at II.B.1. According to the Complaint, before a Managed Account was opened and investments in the covered securities made, Empower asked investors a series of questions regarding their investment goals and strategies, ¶61, input the investors information into Morningstar, ¶8, and relayed Morningstar's recommended asset allocation portfolio and the allocation of assets in the core investment options, *id.*; Dkt. 5-1 at 1–2. These allegations do not reasonably infer a breach of fiduciary duty.

Plaintiff further argues that Empower's disclosures are irrelevant to her claims because they were insufficient. That argument also fails. Empower discloses that it is a subsidiary, or that it or its affiliates may take fees from the underlying fund investments, on more than half of the pages of the Agreement. *See* Dkt. 5-1 at 1, 2, 4, 5.[7] Empower reiterates these disclosures—and

---

[7] Plaintiff's focus on the use of "may" is misplaced. Dkt. 30 at 16. Empower disclosed the fees associated with investments in affiliated funds. ¶75; Dkt. 5-1 at 2. Empower also disclosed that plan sponsors—not Empower—select

others—in its Disclosure Brochure. *See* Dkt. 28-2 at 13–16. Even Defendants' marketing materials, which Plaintiff also attached to the Complaint, plainly disclose Empower's affiliations. Dkt. 5-2 at 1, 3, 4, 9, 11, 16. Plaintiff's argument that customers see these disclosures only after purchasing the Managed Account (Dkt. 30 at 15) is not alleged in the Complaint, and flatly contradicted by the exhibits attached to the Complaint. *See* Dkt 5-2 at 1, 5 (advising that one must "read the following terms and conditions carefully before using or enrolling" in a Managed Account and that one "cannot be enrolled" in a Managed Account "[i]f they do not agree to the terms and conditions"). At bottom, Plaintiff cannot state a claim for breach of fiduciary duty where, as here, the allegations show the fiduciary disclosed potential conflicts and acted with consent.

### 3. Breach of Contract (Claim 7)

In an attempt to save its deficient breach of contract claim, the Opposition distorts—and misrepresents—both the allegations in the Complaint and the language in the Agreement.

Plaintiff first argues that the Complaint states a breach of contract claim because "there is no uncertainty in what Empower agreed to provide—advice that was personalized and made by an investment advisor, not cookie-cutter allocations made by a robot." Dkt. 30 at 18. But Plaintiff mischaracterizes the Agreement. The Agreement describes the Managed Account in detail, explaining investors will receive "a personalized investment portfolio that reflects your investment options and … overall financial picture" and an "Annual Kit" that will "confirm your personal data which is used to provide you with personalized account management." Dkt. 5-1 at 1–2. The Agreement discusses the Managed Account "Methodology," describing how the "appropriate asset

---

the investment options available to their plan participants. Dkt. 5-1 at 2. Plan sponsors may or may not select affiliated funds as investment options. Empower cannot definitively state that its affiliates *will* receive fund fees because, as stated in the Agreement, that is not always the case—it depends on the investment options selected by the plan sponsor. The circumstances here, therefore, are not similar to those in *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286 (E.D. Pa. 2021).

class level model portfolio is selected" and how "[i]nvestment options from the account's menu are then selected to implement each asset-level portfolio." *Id.* at 2. In light of this context, the phrase "personalized account management" does not create the "promise" portrayed by Plaintiff. Indeed, the term "[p]ersonalized" is the type of "general language" that is "too vague to constitute an offer." *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo. App. 1990).[8]

Moreover, the Complaint lacks allegations indicating Empower failed to provide a "personalized investment portfolio reflecting [Plaintiff's] investment options" or "personalized account management." Indeed, the context of the phrase "personalized account management" makes clear that it referred to Empower sending investors an "Annual Kit" that would confirm an investor's biographical information in order to properly calibrate the investor's portfolio of investments. Dkt. 5-1 at 2. Plaintiff does not allege that Empower did not send this "Annual Kit," nor that it failed to account for her biographical information in calibrating her portfolio.

Plaintiff also argues that Empower breached the Agreement by not sufficiently disclosing its potential conflicts, thereby not acting in customers' best interests. Dkt. 30 at 19. Plaintiff claims Empower failed to disclose the fund fees paid to Empower's affiliates. Again, this argument flatly contradicts the language in the Agreement. *See* Dkt. 5-1 at 2, 4. In light of Empower's robust disclosures, Plaintiff cannot sufficiently allege that Empower breached any contractual obligation to Plaintiff by failing to disclose conflicts.

### 4.    Aiding and Abetting (Claims 2, 6)

In the Opposition, Plaintiff argues that the Complaint contains "detailed and specific" allegations regarding EAIC's and ERL's knowledge of and substantial assistance in Empower's purportedly deceptive scheme. Dkt. 30 at 17. Yet, in support of this argument, Plaintiff first cites

---

[8] In *Tuttle*, the challenged "contractual" terms were "significantly more detailed" than the short and general phrase challenged here. 797 P.2d at 828.

to its aiding and abetting causes of action, which contain "formulaic recitations of the elements of a cause of action" that are clearly insufficient. *Iqbal*, 556 U.S. at 678. The other allegations cited by Plaintiff fail to demonstrate that either ERL or EAIC "knew" of or provided "substantial assistance" to the alleged misconduct. Paragraphs 6, 18, 35–37, and 44 only reiterate ERL provided "lists of investment customers." Paragraphs 18, 42, 44–45 only allege EAIC "directed" ERL. Plaintiff tries, but fails, to distinguish these allegations from the vague allegations this Court rejected in *Mandelbaum*. *See* 787 F. Supp. 2d at 1242. Plaintiff's aiding and abetting allegations are nothing but vague references to EAIC "direct[ing]" ERL and both entities having "knowledge" of Empower's misuse of customer information. Dkt. 30 at 18. These allegations fail.

### 5.      Unjust Enrichment (Claim 8)

The Opposition does not save Plaintiff's unjust enrichment claims. Plaintiff does not dispute the existence of a relevant, enforceable contract between Plaintiff and Empower or that the contract "preclude[s] a claim for unjust enrichment" against Empower. *Mandelbaum*, 787 F. Supp. 2d at 1243; *see also* Dkt. 30 at 19.[9] With respect to EFS and EAIC, Plaintiff argues that it would be inequitable for these entities to retain fees "received only as a result of Empower's fraud …. particularly … when [they knew] of the inequitable conduct." *Id.* at 20 (quotations omitted). The Complaint, however, lacks any plausible allegation of "fraud," much less any plausible allegation that EAIC or EFS knew of that fraud. Plaintiff's citation to *Bock v. American Growth Fund Sponsors, Inc.*, 904 P.2d 1381, 1386 (Colo. App. 1995), is therefore unavailing.

### III. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[9] In *United Water & Sanitation District v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058–59 (D. Colo. 2020), the Court allowed the plaintiff to assert inconsistent theories of breach of contract and unjust enrichment because the parties had not established that the contract was valid and enforceable. Here, that is not the case.

Dated: March 22, 2023

Respectfully submitted,

*/s/ Monica K. Loseman*
Monica K. Loseman
Allison K. Kostecka
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: 303.298.5700
Fax: 303.313.2834
Email: mloseman@gibsondunn.com
Email: akostecka@gibsondunn.com

*Attorneys for Defendants Empower Advisory Group, LLC; Empower Retirement, LLC; Empower Financial Services, Inc.; and Empower Annuity Insurance Company of America*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2023, I electronically filed Defendants' Reply in Support of Their Motion to Dismiss the Superseding Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


*/s/ Allison K. Kostecka*