IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-02716-NYW-SKC

EVELYN BIRCHFIELD, individually and as a representative of a class of similarly situated persons,

      Plaintiff,

v.

EMPOWER ADVISORY GROUP, LLC,
EMPOWER RETIREMENT, LLC,
EMPOWER FINANCIAL SERVICES, INC., and
EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss the Superseding Complaint ("Motion to Dismiss" or "Motion"), [Doc. 28, filed February 15, 2023], filed by Defendants Empower Advisory Group, LLC ("Empower"); Empower Retirement, LLC ("ERL"); Empower Financial Services, Inc. ("EFS"); and Empower Annuity Insurance Company of America ("EAIC") (together, "Defendants" or "Empower Defendants").  Plaintiff Evelyn Birchfield, proceeding individually and as a representative of a class of similarly situated persons ("Plaintiff" or "Ms. Birchfield"), has filed a brief in opposition ("Response"), [Doc. 30], and Defendants have submitted a Reply, [Doc. 31].  The Court heard oral argument on the Motion on May 23, 2023, [Doc. 43], and has reviewed the briefing on the Motion and the applicable law.  For the reasons discussed below, the Court respectfully **GRANTS** the Motion and **DISMISSES** the Superseding Complaint [Doc. 5] **without prejudice**.  The Court also **DENIES as moot** Defendants' Motion to Stay Discovery Pending a Decision on the Motion to Dismiss the

Superseding Complaint [Doc. 36, filed April 18, 2023].

## BACKGROUND

Plaintiff brings this action individually and on behalf of a proposed class of customers who purchased "Managed Account" investment-advisory services ("Managed Accounts") from Empower, alleging fraudulent conduct by Empower Defendants in connection with Managed Accounts, the investments made through them, and the fees charged for them. The following factual background is based on the allegations in the Superseding Complaint, [Doc. 5], which the Court takes as true.[1]

ERL, as the country's second-largest provider of retirement plans, possesses extensive personal and financial information for many individuals. [*Id.* at ¶¶ 33–35]. "To capitalize on this information," Empower Defendants allegedly "developed a scheme to leverage consumers' reliance on the fiduciary advice that a registered investment advisor is obligated by federal law to provide to drive customers from low-fee investment and retirement plans to Empower's higher-fee Managed Account service, which contains individual funds owned by Empower's sister companies, including EFS." [*Id.* at ¶ 36]. Plaintiff alleges that "Empower's investment advisors use manipulative sales tactics and falsehoods to push customers into purchasing Managed Account investment advisory services and transferring their funds to Empower, without regard to whether that recommendation is in the customer's best interests." [*Id.* at ¶ 38]. The "deceptive tactics" at issue include the following:

---

[1] Plaintiff, along with former plaintiff Bradley Shaffer, individually and on behalf of his investment retirement account ("Mr. Shaffer"), commenced this action in October 2022 by filing the original Complaint. *See* [Doc. 1]. The Complaint alleged state law claims and, in the alternative, federal securities fraud. *See* [*id.* at ¶¶ 42–111]. Service was not effectuated until after Plaintiff filed the Superseding Complaint, which removed Mr. Shaffer as a named party, dropped the securities claim, and added several state claims. *See generally* [Doc. 5].

- Misrepresenting that Empower's advisors were objective, disinterested fiduciaries whose recommendations were in a customer's best interest;

- Misrepresenting that Empower's advisors were salaried, noncommissioned, and financially disinterested in the sale of Managed Accounts;

- Concealing that Empower's compensation and bonus structures financially incentivized advisors to sell Managed Accounts;

- Concealing that Managed Accounts charged higher fees and generated more revenue for Empower Defendants than available alternatives; and

- Concealing that Empower's advisors employed a software program that only resulted in a recommendation to purchase a Managed Account.

[*Id.* at ¶ 39]. Managed Accounts are offered through Empower, but Plaintiff alleges that "ERL, EFS, [and] EAIC facilitated, aided, abetted, and were unjustly enriched by Empower's malfeasance." [*Id.* at ¶¶ 38, 42].

Specifically, the Superseding Complaint alleges that, starting no later than 2015, Empower's advisors would conduct "Retirement Readiness Reviews" ("RRRs") with individuals identified by ERL as potential targets for Managed Account investment-advisory services. [*Id.* at ¶¶ 43–47]. During these conversations, Empower's advisors would misrepresent that they had no financial incentive to recommend Managed Accounts. [*Id.* at ¶ 50]. In reality, advisors' bonuses were tied to their ability to sell Managed Accounts. *See* [*id.* at ¶¶ 54–56]. At RRRs, advisors would ask potential customers myriad questions about their investment habits and retirement goals, the answers to which the advisors would input into a "proprietary software" created by a nonparty. [*Id.* at ¶¶ 60–63]. However, according to the Superseding Complaint, this software always and only yielded the same recommendation: to purchase Managed Account investment-advisory

3

services. [*Id.* at ¶ 64]. Likewise, Empower's advisors were only permitted to make a single recommendation: to purchase Managed Account investment-advisory services. [*Id.* at ¶ 66]. Plaintiff alleges that she obtained a Managed Account following an RRR in August 2019 in which an Empower representative made such misrepresentations. *See* [*id.* at ¶¶ 154–58].

In a Managed Account, Empower exercises "discretionary authority over allocating [accountholder] assets among the core investment options without . . . prior approval for each transaction." [*Id.* at ¶¶ 71–72]. According to the operative agreements, the investments in a Managed Account are "monitored, rebalanced and reallocated periodically (approximately quarterly)." [*Id.* at ¶ 73]. Despite making claims of personalized investment portfolios to induce customers, the Superseding Complaint alleges that Empower "simply uses a software program to automatically assign customers to one of just seven preset asset allocations." [*Id.* at ¶ 89]. Based upon the applicable asset allocation, Empower then "purchase[s] a basket of individual funds that mirror investments in the broader market, like the S&P 500, government bonds, or money market," although customers are not told that these funds are often affiliated with Empower Defendants. [*Id.* at ¶¶ 92, 98]. Customers who transfer their assets to Managed Accounts pay (1) Investment Advisory Fees, calculated as an annual percentage of the assets within the Managed Account, and paid in exchange for "the personalized investment advice [Empower] promises"; and (2) "Fund Fees" to the specific funds, which often go to Empower Defendants, including EFS and EAIC. [*Id.* at ¶¶ 83–84, 87, 93–94].

Based on these allegations, Plaintiff brings eight claims for relief under state law: (1) breach of fiduciary duty, against Empower; (2) aiding and abetting breach of fiduciary duty, against ERL and EAIC; (3) fraudulent misrepresentation, against Empower; (4) fraudulent omission, against Empower; (5) negligent misrepresentation, against Empower; (6) aiding and

4

abetting fraud and/or negligent misrepresentation, against ERL and EAIC; (7) breach of contract, against Empower; and (8) unjust enrichment, against Empower, EFS, and EAIC. [*Id.* at ¶¶ 111–218]. Within each individual cause of action, Plaintiff "incorporates . . . as if they were fully set forth herein" the Superseding Complaint's substantive allegations about Empower Defendants' conduct. *See* [*id.* at ¶¶ 111, 131, 140, 160, 177, 188, 198, 210]. Demanding a jury trial, Plaintiff seeks compensatory damages, pre-judgment interest, disgorgement of fees paid to Defendants, exemplary or punitive damages, and attorneys' fees, among other forms of relief. [*Id.* at ¶¶ 219–20]. Damages allegedly include the "the value of the conflicted investment-advisory fees . . . paid to Empower and conflicted fund fees . . . paid to Empower's affiliates." *See, e.g.*, [*id.* at ¶ 137]. On February 15, 2023, Defendants moved to dismiss the Superseding Complaint.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts

supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Empower Defendants' Motion to Dismiss argues that all Plaintiff's claims are subject to dismissal because of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). *See* [Doc. 28 at 11–17][2]; *see also* 15 U.S.C. § 78bb(f)(1). Alternatively, the Motion contends that all causes of action fail to state a claim for relief under applicable law. *See* [Doc. 28 at 17–25]. Because the Court agrees that SLUSA bars this action in its entirety, it does not reach the latter set of arguments.

**I.     Motion to Dismiss**

    **A.     SLUSA Preclusion**

To redress "perceived abuses of the class-action vehicle in litigation involving nationally traded securities," Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The PSLRA sets heightened pleading requirements for securities plaintiffs, "limit[s] recoverable damages and attorney's fees, provide[s] a 'safe harbor' for forward-looking statements, impose[s] new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate[s] imposition of sanctions for frivolous litigation, and authorize[s] a stay of discovery pending resolution of any motion to dismiss." *Id.* at 81–82; *see also* 15 U.S.C. § 78u-4. However, by disincentivizing federal securities litigation, the PSLRA "prompted at least some members of the

---

[2] The Court cites to the docket number and the page numbers assigned by the District of Colorado's Electronic Case Files ("ECF") system for all documents.

plaintiffs' bar to avoid the federal forum altogether," and "bring[] class actions under state law, often in state court." *Dabit*, 547 U.S. at 82. Congress responded with SLUSA.

As relevant here, SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A); *see also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1281 (10th Cir. 2008). A "covered class action" is one in which more than fifty individuals seek to recover damages on a class-wide basis. 15 U.S.C. § 78bb(f)(5)(B). And the definition of "covered security" incorporates the definition in the Securities Act of 1933, referring to "securities traded on a national exchange." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 380–81 (2014); *see also* 15 U.S.C. § 78bb(f)(5)(E).

The presence of most of these elements is not seriously disputed here, as Ms. Birchfield seeks to represent a sizable class bringing exclusively state law claims based on Empower Defendants' misrepresentations, and the securities ultimately purchased in the Managed Accounts were covered securities. Rather, it appears that Empower Defendants' Motion to Dismiss depends solely on the Court's application of SLUSA's "in connection" requirement, and specifically whether the misrepresentations at issue were made in connection with the purchase or sale of covered securities in Plaintiff's Managed Account. *See* [Doc. 30 at 12–16; Doc. 31 at 7]. Before discussing whether the "in connection" element is met, however, the Court first considers the scope of the argument and whether it falls under Rule 12(b)(1) (as Empower contends) or under Rule 12(b)(6) (as Plaintiff suggests).

B.       Scope of SLUSA Preclusion

With respect to scope, SLUSA provides that "[n]o covered class action . . . may be maintained" in court where the preclusion prerequisites listed above are met.  15 U.S.C. § 78bb(f)(1).  In *Anderson*, the leading Tenth Circuit case on SLUSA preclusion, the court considered how SLUSA would apply to lawsuits with multiple claims that might not all individually fall within SLUSA's ambit.  As the Tenth Circuit observed, "[a] few courts have held that, because SLUSA uses the word 'action,' SLUSA requires dismissing the entire class action complaint if one or more of the individual claims is precluded by SLUSA."  *Anderson*, 521 F.3d at 1287 n.6 (citing *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 305 (3d Cir. 2005)).  However, the court explained that it did not need to reach the question because the plaintiffs had "incorporated their general allegations into each of their substantive counts," all of which were based only on state law, "so SLUSA preclude[d] all of [p]laintiffs' claims individually."  *Id.*; *see also Rowinski*, 398 F.3d at 305 ("But we need not decide whether a count-by-count analysis is appropriate in this case, because plaintiff has incorporated every allegation into every count in his complaint.").

The reasoning in *Anderson* applies to this case.  Plaintiff brings only state law claims in the Superseding Complaint, *see generally* [Doc. 5], and each of Plaintiff's eight substantive causes of action incorporates her general allegations, *see* [*id.* at ¶¶ 111, 131, 140, 160, 177, 188, 198, 210].  To the extent the Court finds that Plaintiff's allegations involve any misrepresentations "in connection with the purchase or sale of a covered security" under SLUSA, 15 U.S.C. § 78bb(f)(1), count-by-count analysis would be unnecessary, and dismissal of the Superseding Complaint as a whole would be required by Tenth Circuit precedent.  *See Anderson*, 521 F.3d at 1287 n.6; *see also, e.g.*, *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1250 (D. Colo. 2011).

### C. Basis for Dismissal

As a final preliminary matter, the Court concludes that its consideration of whether a dismissal under SLUSA is appropriate should proceed under Rule 12(b)(6). In the Motion to Dismiss, Empower Defendants base their SLUSA argument on Rule 12(b)(1). *See* [Doc. 28 at 7]. Opposing dismissal, Plaintiff responds that Defendants provide no legal authority for their position that SLUSA dismissal is jurisdictional, and she argues that Rule 12(b)(6) is the proper authority in the Tenth Circuit. *See* [Doc. 30 at 12 n.4 (citing *Anderson*, 521 F.3d at 1284)]. Empower Defendants reply that, in *Anderson*, "the Tenth Circuit did not directly address whether SLUSA dismissals are governed by Rule 12(b)(1) or 12(b)(6)." [Doc. 31 at 7 n.3]. In Defendants' view, *Anderson* implied SLUSA's jurisdictional status by stating that "the jurisdiction conferred upon the federal courts by SLUSA is . . . limited to determining whether [SLUSA] precludes the plaintiffs' claims." [*Id.* (quoting *Anderson*, 521 F.3d at 1282)]. Defendants also contend that "[t]he vast majority of courts" apply Rule 12(b)(1) in these circumstances. [*Id.*].

The Court finds that *Anderson* does not resolve this issue. In *Anderson*, the Tenth Circuit affirmed the district court's dismissal pursuant to SLUSA under Rule 12(b)(6), but the court did not analyze or consider the issue whether the argument was properly considered under Rule 12(b)(1) instead. *See* 521 F.3d at 1283–84. In doing so, the Tenth Circuit indicated that SLUSA does not contain "a 'preemption provision,' but rather a 'preclusion provision': it 'does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court.'" *Id.* at 1281 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n. 1 (2006)). The proposition Defendants highlight—that "the jurisdiction conferred upon the federal courts by SLUSA is, in essence, limited to determining whether 15 U.S.C. § 78bb(f)(1) precludes the plaintiffs' claims"—refers to the exercise of a court's

9

removal jurisdiction under SLUSA, not the jurisdictional status of SLUSA preclusion for purposes of applying the Federal Rules of Civil Procedure. *See id.* at 1282. Limiting a court's jurisdiction to determining whether SLUSA applies does not necessarily render the applicability of SLUSA a jurisdictional matter. Neither the Parties, nor this Court, found any Tenth Circuit authority directly on point.

This Court recognizes that, in several circuits, SLUSA dismissals are jurisdictional. *See, e.g.*, *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 847 (9th Cir. 2017); *LaSala v. Bordier et Cie*, 519 F.3d 121, 129 n.7 (3d Cir. 2008). Elsewhere, however, the issue is properly raised under Rule 12(b)(6). *See, e.g.*, *Brown v. Calamos*, 664 F.3d 123, 127–28 (7th Cir. 2011). As discussed above, the matter remains unsettled in the Tenth Circuit. The Court respectfully agrees with the Rule 12(b)(6) approach: where class allegations fall within SLUSA's prohibition, the statute forecloses the class's ability to recover in court, so any pleading would fail to state a claim for relief. *See id.* at 128 ("But when SLUSA is a bar, it operates as an affirmative defense, which is a defense on the merits, not a jurisdictional defense.").

The Court is also mindful of the weight of the recent Supreme Court cases applying a "clear statement" rule to determine whether a statutory provision is jurisdictional and instructing that a provision's jurisdictional status is not to be lightly inferred. *See, e.g.*, *Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1112 (2023) (observing that "[w]e treat a rule as jurisdictional only if Congress 'clearly states' that it is" (quotation omitted)); *Wilkins v. United States*, 143 S. Ct. 870, 877 (2023) (holding that "[t]o police this jurisdictional line, this Court will "treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is" (quotation omitted)); *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493, 1498–99 (2022) (same). Considering these cases, the Tenth Circuit's description of SLUSA's preclusive effect in the course of affirming a Rule

10

12(b)(6) dismissal, and the absence of a "clear statement" in SLUSA's text about jurisdiction, the Court respectfully concludes that its analysis, and any dismissal under SLUSA, should proceed, as a procedural matter, under Rule 12(b)(6). A plaintiff may not state a claim in court for a covered class action that meets SLUSA's prerequisites.

### D. Discussion

In *Dabit*, the Supreme Court stated that "Congress envisioned a broad construction" of SLUSA's preclusion provisions, including the "in connection" requirement. 547 U.S. at 86. In *Troice*—confronted with a plaintiff class that purchased unregistered securities, subject to a misrepresentation that they were backed by covered securities—the Court clarified that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security." 571 U.S. at 387; *see also id.* ("We do not here modify *Dabit*."). The Court applies that standard here, assessing whether Empower Defendants' misrepresentations were material to a decision by Plaintiff to trade covered securities.

Empower Defendants argue that "[t]he entire purpose of [a] Managed Account was to grant Empower discretion to invest an account holder's money in covered securities," so the alleged misrepresentations were material to Plaintiff's decision to purchase covered securities and therefore meet the "in connection" requirement. [Doc. 28 at 15].[3] Plaintiff responds that her allegations deal solely with misrepresentations about "account type," and enrolling in a Managed Account does not bear on a subsequent, separate decision to purchase securities in that account.

---

[3] Empower Defendants also analogize Plaintiff's allegations to "recent cases involving a purported breach of the duty of best execution." [Doc. 28 at 16]. Plaintiff finds this analogy inapposite. *See* [Doc. 30 at 16 n.6]. The Court does not rely upon it in deeming the Superseding Complaint precluded.

11

[Doc. 30 at 13 (emphasis omitted)]; *see also* [*id.* at 14 ("Concealing that most or all of the available investment options when a customer bought Managed Account services were conflicted, affiliated funds is a misrepresentation about the nature of the *account*, not the purchase or sale of some security.")].  Plaintiff also suggests that SLUSA's "in connection" requirement is unmet by her allegations because "Empower, not class members, purchased the securities—without even consulting Plaintiff or the class members," [*id.* at 14–15], and *Troice* holds that the purchase in question must be by "a party other than the fraudster," 571 U.S. at 388.  In their Reply, Empower Defendants suggest that *Anderson* largely controls this case, [Doc. 31 at 7–8], attempt to distinguish Plaintiff's cases, [*id.* at 10–14], and stress that "Plaintiff cannot contest that the nature of her relationship with Empower necessarily involved the purchase or sale of securities," [*id.* at 9].

At the outset, the Court notes that *Anderson* has minimal weight here.  In that case, the plaintiffs did not dispute that the "in connection" element was satisfied, so the Tenth Circuit did not address it.  *See Anderson*, 521 F.3d at 1287.  A more useful case for present purposes is *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928 (7th Cir. 2017).  There, the Seventh Circuit found that SLUSA precluded claims that the defendant bank "g[ave] its employees incentives to place clients' money in the [defendant's] own mutual funds, even when those funds ha[d] higher fees or lower returns than competing funds sponsored by third parties." *Id.* at 929.  In finding those claims precluded, the court observed: "[t]he sort of situation we encounter—in which one party to a contract conceals the fact that it planned all along to favor its own interests—is a staple of federal securities law." *Id.* at 932; *see also id.* ("A statement along the lines of 'we will act in your best interest' plus nondisclosure of a competing private interest is the basis of many securities actions.").  Focusing on the "in connection" element in particular, the court reasoned that the

12

element was satisfied because the relevant "omission was made in connection with an impending investment decision (into which mutual fund would [plaintiff] invest)." *Id.* at 933.

The Court finds *Holtz* persuasive. Some or all of Empower Defendants' misrepresentations were made in connection with the purchase or sale of covered securities because they were material to Plaintiff's purchase of such securities in her Managed Account at Empower Defendants' direction. *See id.* In essence, the Superseding Complaint alleges that Empower Defendants targeted Plaintiff and tricked her into moving her assets into a Managed Account, where they were assigned to one of seven asset profiles and invested in covered securities. *See* [Doc. 5 at ¶¶ 36, 88–89, 92]. Discovering that her Empower advisor allegedly did not offer personalized fiduciary advice has now convinced Plaintiff that she was defrauded in connection with her Managed Account's investments. *See* [*id.* at ¶¶ 145, 153]. In other words, Plaintiff's harm is based on the investments she made not having been made under the circumstances as she believed them to be. *Cf.* [Doc. 31 at 8 (arguing that Plaintiff's "theory of liability" is "inextricably intertwined with the purchase or sale of securities")]. Because Empower's misrepresentations induced Plaintiff to open a Managed Account, and because placing funds in a Managed Account meant investing those funds in covered securities, the Court finds that the "in connection" element is satisfied here. *See Holtz*, 846 F.3d at 928, 933; *see also In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 142 (2d Cir. 2015) (finding "in connection" element met where plaintiffs invested in uncovered funds on the understanding that the funds would use the proceeds to purchase covered securities).

In her Response, Plaintiff cites several out-of-circuit cases to support her contention that the Superseding Complaint is not barred by SLUSA. *See* [Doc. 30 at 13–14]. None is binding, and all are materially distinguishable. First, Plaintiff refers the Court to *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692 (9th Cir. 2021). In that case, the proposed class members alleged

13

that the defendant financial services firm, through which they held commission-based investment accounts, "failed to conduct a 'suitability analysis' before inviting [them] to switch to fee-based accounts." *Id.* at 697. Stressing that the plaintiffs did not claim "that they would have purchased or sold *different* covered securities had Edward Jones conducted a suitability analysis, which might have resulted in [p]laintiffs remaining in commission-based accounts," the court reasoned that the "in connection" requirement was not satisfied, so SLUSA did not warrant dismissal. *Id.* at 705 (emphasis added); *see also id.* ("Plaintiffs do not allege that their trading strategies would have changed.").

To rule in Empower Defendants' favor here, the Court need not quarrel with the Ninth Circuit's statement that "[c]hoosing a broker or specific type of account is fundamentally different than choosing to buy or sell a covered security." *Id.* at 706. Assuming that is true, the critical fact before the Ninth Circuit case was that the account switch did not affect the plaintiff class members' investment profiles. The plaintiffs specifically alleged that their "buy-and-hold philosophy remained unchanged" throughout the transition in account type. *Id.* at 705.[4] In other words, the misrepresentation did not lead to a change in trading behavior. Here, in contrast, Plaintiff alleges that she invested in covered securities through her Managed Account at Empower's direction, and she does not suggest that she held identical investments prior to obtaining Managed Account investment-advisory services from Empower. That rendered Empower's misrepresentations material to her investments in covered securities, for it is wholly unreasonable to infer that the

---

[4] The same is true of another case Plaintiff cites. *See Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-cv-195-CEH-AAS, 2021 WL 6091094, at *1–2 (M.D. Fla. Dec. 23, 2021). The *Nguyen* court noted that the plaintiff's "investment strategy was to buy and hold, and she paid modest commissions for the few trades that were executed" until she was switched to a fee-based account and "charged far higher fees than the modest per-transaction commissions for commission-based accounts." *Id.*

14

investments made on her behalf by Empower Defendants were identical to Plaintiff's previous investments. *See Cross v. Frazier*, No. 6:18-cv-00081-DAK-DBP, 2020 WL 4360677, at *2 (E.D. Okla. July 6, 2020) ("When reviewing a complaint, the court accepts all plausible factual allegations but need not give credence to unwarranted inferences, unreasonable conclusions, or arguments." (quotation omitted)). The point of a Managed Account, according to the Superseding Complaint, was yielding agency over one's investments to Empower's asset profile. *See* [Doc. 5 at ¶¶ 71–72].

Next, Plaintiff relies on *Brink v. Raymond James & Associates, Inc.*, where a complaint alleging "hidden profit on a processing or transaction fee" was deemed not material to the decision to purchase or sell covered securities. 892 F.3d 1142, 1149 (11th Cir. 2018). In that case, the Eleventh Circuit stated that "the choice of a type of investment account, much like the choice of a broker-dealer, is not intrinsic to the investment decision itself." *Id.* at 1148–49. But, just as in *Anderson*, the misrepresentations about the fee in *Brink* did not bear on any substantive investment decisions. *See id.* at 1149. The court explained that any "alleged undisclosed profit on the . . . fee for transaction execution and clearing, known and agreed to in advance by . . . customers . . . objectively could not make a significant difference to a reasonable investor's decision to purchase or sell a covered security." *Id.* Here, in contrast, the misrepresentations at issue led directly to Plaintiff's investment in new and different covered securities purchased through her Managed Account under the applicable asset profile. Additionally, the Court notes that *Brink* did not purport to resolve a disagreement about SLUSA's "in connection" prong. *See id.* at 1150 ("Because we conclude that the alleged misrepresentation was not material, we do not consider whether it was made 'in connection with' the purchase or sale of covered securities."). However, in a footnote discussing that requirement, the *Brink* court distinguished cases where defendants "received

15

undisclosed kickbacks and incentives, creating a conflict of interest," which is exactly what Plaintiff alleges here. *Id.* at 1150 n.10; *see also, e.g.*, [Doc. 5 at ¶¶ 54–55].

Plaintiff also directs her argument to the Supreme Court's admonition that, for SLUSA to apply, the securities in question must be purchased by an individual "other than the fraudster." *See Troice*, 571 U.S. at 387. But using that language to limit SLUSA's role in this case would separate *Troice* from its context. In *Troice*, the Supreme Court dealt with individuals that purchased uncovered securities but were misrepresented as to the existence of other, covered securities that were purchased by the seller and that supposedly backed the plaintiffs' uncovered securities. *See id.* at 381. The only party holding a covered security in that scenario was the seller, so the Court stressed that SLUSA requires a misrepresentation that is material to a *plaintiff's* decision to buy or sell covered securities. *See id.* at 394 (noting that SLUSA is inapplicable "when the fraud bears so remote a connection to the national securities market that no person actually believed he was taking an ownership position in that market"). Here, Empower Defendants made the actual trading decisions for Plaintiff's Managed Account, but that does not change the fact that Plaintiff was the beneficial owner of all covered securities purchased. *See, e.g.*, *Holtz*, 846 F.3d at 933 ("That some of the investment decisions were made by investment advisers as Holtz's agent does not take this out of the 'in connection with' domain."). Indeed, the fact that Empower made Plaintiff's Managed Account trades—"without any customer choice at all," as Plaintiff argues elsewhere, [Doc. 30 at 14]—is what ensures that her Managed Account enrollment is so decisive to her investments in covered securities. It is what distinguishes this case from the Ninth and Eleventh Circuit decisions discussed above, where the misrepresentations did not affect the plaintiffs' trading activity.

Contrary to Plaintiff's contentions, the Superseding Complaint is clear that the misrepresentations at issue here *did* affect her trading behavior. According to the Superseding

16

Complaint, Empower Defendants' misrepresentations convinced Plaintiff to transfer her funds into a Managed Account, where they were promptly invested in covered securities, consistent with whatever asset profile Empower assigned. That is the connection that matters for purposes of SLUSA preclusion: the investments in covered securities were the direct result of the misrepresentations. *See Troice*, 571 U.S. at 387. Opening a Managed Account effects a change in trading behavior. *See* [Doc. 5 at ¶ 72]. The Court thus respectfully concludes that the misrepresentations at issue here were made "in connection with the purchase or sale of a covered security" under SLUSA. 15 U.S.C. § 78bb(f)(1)(A).

As discussed above, Plaintiff does not dispute any other aspect of SLUSA preclusion. *See* [Doc. 30 at 7–11]. Because the Superseding Complaint seeks to bring a covered class action based on misrepresentations made in connection with the sale of covered securities, and because the key allegations are incorporated into every substantive cause of action, dismissal of the case is warranted under Rule 12(b)(6). *See Anderson*, 521 F.3d at 1287 n.6; *cf. Holtz*, 846 F.3d at 934 ("[T]here are plenty of ways to bring wrongdoers to account—but a class action that springs from lies or material omissions in connection with federally regulated securities is not among them."). The Superseding Complaint is **DISMISSED without prejudice**.

## II.     Motion to Stay Discovery

After the briefing on the Motion to Dismiss closed, but before the Court held oral argument, Empower Defendants filed a Motion to Stay Discovery Pending a Decision on the Motion to Dismiss the Superseding Complaint ("Motion to Stay Discovery"). *See* [Doc. 36]. The Motion to Stay Discovery requests that the Court suspend discovery until the Motion to Dismiss is resolved. [*Id.* at 11]. The Motion to Stay Discovery is fully briefed and was previously referred to the Honorable S. Kato Crews. [Doc. 37; Doc. 40; Doc. 42]. Considering the dismissal of the

Superseding Complaint, [Doc. 5], the Court now withdraws the referral to Judge Crews and **DENIES as moot** the Motion to Stay Discovery.  If Plaintiff files a new pleading, Defendants may renew their motion.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)  Defendants' Motion to Dismiss the Superseding Complaint [Doc. 28] is **GRANTED**;

(2)  The Superseding Complaint [Doc. 5] is **DISMISSED without prejudice**;

(3)  Defendants' Motion to Stay Discovery Pending a Decision on the Motion to Dismiss the Superseding Complaint [Doc. 36] is **DENIED as moot**; and

(4)  The Clerk of Court is **DIRECTED to TERMINATE** the case.[5]

DATED: September 6, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[5] Plaintiff has already filed two operative pleadings in this action.  *See* [Doc. 1; Doc. 5].  Plaintiff also does not request leave to amend in her Response to the Motion to Dismiss and has not filed a Motion to Amend.  *See* [Doc. 30].  In the absence of a request to amend, the district court may dismiss the action, rather than sua sponte grant leave to amend.  *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time.  Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss." (citations omitted)); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A] court need not grant leave to amend when a party fails to file a formal motion.").